OPINION
{¶ 1} Defendant-appellant, Dodou A. Cham, was indicted on trafficking in marijuana and possession of marijuana in excess of 20,000 grams. After a jury trial, appellant was convicted of both counts. The trial court sentenced him to imprisonment for eight years after merging the two counts. Appellant was also fined $7,000, plus costs. Appellant filed a motion for new trial, which was denied. Appellant filed a motion for declaration of marginal indigence, which the trial court also denied. Appellant filed a notice of appeal from the sentencing entry and also a notice of appeal from the denial of his motion for a new trial. The appeals were consolidated.
 {¶ 2} Appellant has raised the following assignments of error:
 [I.] THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY OVERRULING THE MOTION FOR A NEW TRIAL.
 [II] THE TRIAL COURT ERRED TO THE SUBSTANTIAL PREJUDICE OF THE DEFENDANT BY DENYING THE DEFENDANT'S MOTION TO DECLARE HIM MARGINALLY INDIGENT FOR PURPOSES OF COSTS ON APPEAL.
 {¶ 3} By his first assignment of error, appellant contends that the trial court erred by overruling his motion for new trial. Crim.R. 33 provides the grounds for granting a new trial, in pertinent part, as follows:
 (A) Grounds
 A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 * * *
 (5) Error of law occurring at the trial[.]
 {¶ 4} The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed. State v. Schiebel
(1990), 55 Ohio St.3d 71, paragraph one of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "`It is clear from the language of Crim.R. 33 that a new trial is not to be granted unless it affirmatively appears from the record that a defendant was prejudiced by one of the grounds stated in the rule, or was thereby prevented from having a fair trial. See Crim.R. 33(E).'" State v. Samatar,152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 35, quoting Columbus v. Carroll (Aug. 27, 1996), Franklin App. No. 96APC01-90.
 {¶ 5} A motion for new trial based upon any ground except newly discovered evidence ordinarily must be filed within 14 days after the verdict is rendered. Crim.R. 33(B). If a defendant files a motion for new trial after the time periods specified in Crim.R. 33(B) have expired, the defendant must first seek leave of court to file a delayed motion. State v. Lei, Franklin App. No. 05AP-288, 2006-Ohio-2608. To obtain such leave, the defendant must demonstrate by clear and convincing evidence that he was unavoidably prevented from timely filing the motion for a new trial or from discovering the new evidence. Crim.R. 33(B).
 {¶ 6} In this case, the jury verdict was rendered September 23, 2005, and appellant filed his motion for new trial November 1, 2005, but did not seek leave of court to file it. The trial court could have denied it on the basis of untimeliness alone.
 {¶ 7} Appellant contends that the trial court erred in denying his motion for a new trial because the trial court should not have admitted the dog-sniffing evidence concerning the money because it was irrelevant and unfairly prejudicial. At trial, the first person to testify was Warren Isaman, an employee of Yellow Transportation Company. Isaman testified that he noticed a suspicious crate on the Yellow Transportation dock. The company listed as the shipper on the label on the crate called to complain that they had received a bill but did not do business with Yellow Transportation. Isaman called Detective Jerry Peters of the Columbus Police Narcotics Division to investigate the crate, as was normal procedure when a package seemed suspicious. Appellant arrived at Yellow Transportation to pick up the crate but was told it had not yet arrived.
 {¶ 8} Detective Peters testified that the crate was suspicious because the label was small and handwritten, which was unusual on a large package. In addition, the package had two or three fragile stickers affixed and the label indicated that the sender had paid for a higher priced shipping service for it to arrive quickly. The receipt is normally typewritten, not small and handwritten as in this case. Also, the receipt did not contain typical information such as phone numbers or a return address. Detective Peters testified that these are typical clues when looking for suspicious freight. (Tr. at 122.) Detective Peters obtained a search warrant and, upon his return, appellant had also returned and paid for the crate. When it was loaded onto his truck, appellant was detained. Inside the crate was a piece of furniture with a false bottom containing over 20,000 grams of marijuana. A search of appellant's vehicle revealed a duffel bag in the backseat containing marijuana residue.
 {¶ 9} Columbus Police Officer David Moody testified that he has worked 12 years with the K-9 unit as a canine handler. He was called to Yellow Transportation with his partner, Tino. Tino sniffed the entire area, including approximately 350-400 items. Tino alerted on the crate in question and the money appellant used to pay for the package. Tino alerts by scratching very vigorously.
 {¶ 10} Appellant contends that the trial court erred in admitting the dog-sniffing evidence concerning the money because it was irrelevant and unfairly prejudicial. Initially, appellant argues that Officer Moody's testimony was incorrect when he stated that Tino was trained to alert to the odor of narcotics. Appellant also argues that, in order to be relevant, Officer Moody's testimony must have established that the money was tainted with the odor of marijuana because it is possible that Tino alerted to appellant's scent, rather than the scent of marijuana. Also, appellant contends that virtually all money in circulation is contaminated with the odor of cocaine.
 {¶ 11} Appellant's first argument is that no narcotics were used to train the police dogs, but, rather, chemicals used to process, such as washes or trace solvents, or chemicals associated with the decomposition of drugs and commonly associated with the drugs, were used in the training process. Since Officer Moody testified that Tino is trained to detect narcotics, appellant argues that his testimony is incorrect. However, while Officer Moody's testimony might not be technically correct, it is not prejudicial. Officer Moody testified, as follows:
 Q. Then you said talking about narcotics that Tino is trained on narcotics. What does that type of training entail?
 A. A certain amount of or a specific brand of narcotic that we traditionally run into is what they're trained in, like marijuana, hashish, cocaine, crack cocaine, heroin, methamphetamines, and that primarily the odors that they're trained to find.
(Tr. at 82.)
 {¶ 12} Thus, Officer Moody testified that Tino is trained to find such odors, not necessarily the narcotics, and there is no prejudice in the lack of minute detail and accuracy because the testimony conveys the correct impression.
 {¶ 13} Appellant also argues that, in order to be relevant, Officer Moody's testimony must have established that the money was tainted with the odor of marijuana because it is possible that Tino alerted to appellant's scent, rather than the scent of marijuana. While Officer Moody did testify that Tino was trained to find drugs or persons, the testimony regarding the money alert indicated that the alert occurred because of drugs and there was no indication that it was because of appellant. Officer Moody testified that, ordinarily, several, if not five, six or seven, identical envelopes or bags of circulated money are tested to see if the dog alerts to narcotics on the money. (Tr. at 84.) Tino alerted to the money that appellant had used to pay for the crate and picked it out of the identical bags containing money from other people. (Tr. at 95-96.) Detective Peters testified that the money was kept separate in a brown envelope and then placed with other packages of money and Tino alerted to the money appellant used to pay for the crate. (Tr. at 148-149.)
 {¶ 14} The flaw in appellant's argument that Tino alerted to appellant rather than marijuana is that there is no evidence that Tino had any contact with appellant to first know appellant's odor. There was no relationship or contact established between appellant and Tino and appellant provided no evidence of the police acting inappropriately. Thus, there was no evidence at trial to support this theory.
 {¶ 15} Appellant also argues that virtually all money in circulation is contaminated with the odor of cocaine, thus, Tino's alert to the money is of no probative value. Appellant cites several cases in which courts have questioned whether dog alerts to money are entitled to probative weight. However, many of the cases appellant cited involved cocaine, not marijuana. Also, most of these cases involved forfeiture and probable cause, but, in this case, appellant used the money to pay for the crate. There was no question that the money was used to pay for the shipping service and the crate. In addition, Tino only alerted to appellant's money, not the other bundles, thus, if appellant's theory is that all money is tainted with drugs, Tino would not have distinguished appellant's bundle.
 {¶ 16} Finally, there were other factors involved in this case to cause the crate to be suspicious, other than Tino's alert. The first is the company listed as the sender had never done business with Yellow Transportation. Detective Peters testified that the crate had several factors that are typical clues when looking for suspicious freight, such as the label was small and handwritten, which was unusual on a large package, the package had two or three fragile stickers affixed and the label indicated that the sender had paid for a higher priced shipping service for it to arrive quickly. The receipt is normally typewritten, not small and handwritten as in this case. Also, the receipt did not contain typical information such as phone numbers or a return address. Thus, Tino's alert was only one factor involved in this case and the trial court did not err in admitting it, nor in denying appellant's motion for new trial based on the admission of such evidence. Appellant's first assignment of error is not well-taken.
 {¶ 17} By the second assignment of error, appellant contends that the trial court erred by denying appellant's motion to declare him marginally indigent for purposes of costs on appeal. Appellant's family and friends have agreed to pay counsel to represent him on appeal but have no obligation to pay for the costs associated with the appeal. Appellant has been incarcerated since September 23, 2005, and has no earned income, owns no property that produces income, and has no savings or property that can be liquidated to produce money to pursue his appeal. Thus, appellant filed a motion for the court to declare him marginally indigent to pay for the costs associated with the appeal.
 {¶ 18} In State v. Tymcio (1975), 42 Ohio St.2d 39, the Ohio Supreme Court stated that a criminal defendant is entitled to court-appointed counsel when a defendant is unable to employ counsel rather than requiring indigency. The court found that the determination of need must not depend on whether an accused ought to be able to employ counsel, but whether he is able to do so. In State v. Caulley (1999),132 Ohio App.3d 706, this court stated that the abuse of discretion standard applies to the determination of whether a criminal defendant is entitled to court-appointed counsel. In Caulley, this court found that the trial court had abused its discretion in not appointing counsel and providing a transcript at state expense, even though the defendant had filed his notice of appeal on the same day as his affidavit of indigency and motions for appointment of counsel and preparation of a trial transcript at state expense.
 {¶ 19} In this case, appellant filed an affidavit of indigency, indicating he had been incarcerated since September 23, 2005, owned an automobile he had purchased in 2004, for approximately $2,000, and had approximately $400 in his account at the Ohio Department of Correction. The fact that appellant has only the available funds to retain counsel (who seeks no additional payment), should not preclude the finding of indigency to cover the expenses necessary to provide an adequate appeal. In this case, counsel indicates in appellant's brief that only the expenses in this appeal will be sought to be reimbursed. Appellant's second assignment of error is well-taken.
 {¶ 20} For the foregoing reasons, appellant's first assignment of error is overruled and his second assignment of error is sustained. In his brief, appellant's counsel stated he advanced appellant the costs associated with the appeal (Brief, at 19). To the extent counsel seeks reimbursement, he shall file a motion with this court with evidence of payment. The judgment of the Franklin County Court of Common Pleas is affirmed as to appellant's conviction, sentence and the denial of his motion for new trial, and reversed only as to the finding of indigency upon appeal.
Judgment affirmed in part and reversed in part.
BRYANT and TRAVIS, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.