OPINION
{¶ 1} Defendant-appellant, Cleaster T. White, appeals from a conviction for possession of cocaine in violation of R.C. 2925.11, a felony of the fifth degree. For the following reasons, we affirm.
 {¶ 2} On the evening of October 24, 2005, Columbus Police Officer Steven McGaw and his partner were working special duty at Sunshine Annex, an apartment building operated by the Columbus Metropolitan Housing Authority. While patrolling in the lobby, Officer McGaw and his partner encountered two residents who told them that *Page 2 
defendant had outstanding warrants. As the officers and the residents were talking, defendant entered the lobby. The officers approached defendant, asked for identification, and conducted a warrant check. After the warrant check verified that defendant did, in fact, have two outstanding misdemeanor warrants, Officer McGaw advised defendant that he was under arrest. Officer McGaw patted defendant down and found no weapons. At that point, defendant asked Officer McGaw if he could lock his apartment door and put the beer he was carrying in his refrigerator. Because defendant had been cooperative, Officer McGaw agreed.
 {¶ 3} Officer McGaw and defendant rode the elevator to defendant's second-floor apartment. Defendant entered the apartment and Officer McGaw followed, stopping just inside the entrance. A woman was sitting on the couch in defendant's living room. Defendant asked the woman to leave, walked to the refrigerator (which was immediately to the right of the door), opened it, and placed his beer inside. Defendant started to close the refrigerator door, but then stopped and pulled out a cigarette pack from his pants pocket, put the pack in the refrigerator, and shut the door. While defendant placed the beer and cigarette pack in the refrigerator, Officer McGaw stood three to four feet from the refrigerator, facing defendant. Due to Officer McGaw's location, the open door of the refrigerator obstructed Officer McGaw's view into the refrigerator.
 {¶ 4} After the woman left, Officer McGaw handcuffed defendant. Officer McGaw asked defendant what he had put in the refrigerator, and defendant replied, "[j]ust my cigarettes." (Tr. at 28.) Officer McGaw then retrieved the cigarette pack from the refrigerator. In between the cellophane and the package was a small, white rock, later *Page 3 
identified as .02 grams of crack cocaine. At trial, Officer McGaw estimated that he retrieved the cigarette pack three to five minutes after defendant put it in the refrigerator.
 {¶ 5} On January 30, 2006, defendant was indicted for one count of possession of cocaine. Defendant moved to suppress the crack cocaine that Officer McGaw had seized from the refrigerator. After an evidentiary hearing, the trial court denied the motion. Defendant proceeded to a jury trial, during which Officer McGaw testified to the facts set forth above. The state offered into evidence the crack cocaine. Defendant also testified, presenting his own version of what occurred in the apartment. According to defendant, Officer McGaw set him up.
 {¶ 6} On December 4, 2006, the jury found defendant guilty of possession of cocaine. Over a month later, defendant filed a motion for a new trial. Relying upon a juror's affidavit, defendant asserted that the jury foreman had discussed the case with a police officer during a break in the jury's deliberations. Based upon this juror misconduct, defendant argued that he was entitled to a new trial.
 {¶ 7} At the March 1, 2007 sentencing hearing, the trial court denied defendant's motion for a new trial. The trial court then sentenced defendant to one year of community control; a sentence that the trial court reduced to judgment in a March 6, 2007 judgment entry.
 {¶ 8} Defendant now appeals from the March 6, 2007 judgment entry and assigns the following errors:
 [1.] The trial court erred in overruling appellant's motion to suppress evidence.
 [2.] The evidence was legally insufficient to support appellant's conviction for possession of cocaine. *Page 4 
 [3.] The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 [4.] Appellant's conviction was against the manifest weight of the evidence.
 [5.] The trial court erred in overruling appellant's motion for a new trial.
 {¶ 9} By his first assignment of error, defendant argues that the trial court erred in denying his motion to suppress the crack cocaine recovered from his refrigerator. We disagree.
 {¶ 10} Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Roberts, 110 Ohio St.3d 71,2006-Ohio-3665, at ¶ 100; State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. Because the trial court is in the best position to resolve factual questions, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. However, the appellate court independently determines whether the facts satisfy the applicable legal standard. Id.
 {¶ 11} Both the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require government officials to procure a warrant based upon probable cause before conducting a search. Generally, warrantless searches are per se unreasonable, subject to a number of well-recognized exceptions.Katz v. United States (1967), 389 U.S. 347, 357, 88 S.Ct. 507. A search incident to arrest is not only an exception to the warrant requirement; it is also a reasonable search under the United States and Ohio Constitutions. United States v. Robinson (1973), 414 U.S. 218, 235,94 S.Ct. 467; State v. Mathews (1976), 46 Ohio St.2d 72, 74-75. *Page 5 
 {¶ 12} Ordinarily, the arrest of a person outside of his residence does not justify a warrantless entry into and search of the residence itself. Chimel v. California (1969), 395 U.S. 752, 763, 89 S.Ct. 2034. However, a police officer may accompany an arrestee into his residence to monitor his movements. Washington v. Chrisman (1982), 455 U.S. 1, 6,102 S.Ct. 812, 70 L.Ed.2d 778 (a police officer has "a right to remain literally at [an arrestee's] elbow at all times; nothing in theFourth Amendment is to the contrary"). Applying this rule of law, the United States Supreme Court held that a police officer could accompany an arrestee into his dormitory room so that the arrestee could obtain his identification. A number of courts have since applied the rule articulated in Chrisman to a variety of contexts. See United States v.Harness (C.A.6, 2006), 453 F.3d 752, 756 (officers lawfully entered the arrestee's house with him so that he could retrieve certain personal items and turn off the stove); United States v. DeBuse (C.A.8, 2002),289 F.3d 1072, 1074-1075 (officers were constitutionally permitted to escort the arrestee into his house after he asked to get his shoes, socks, keys, and wallet); United States v. Berkowitz (C.A.7, 1991),927 F.2d 1376, 1389 (officers could follow the arrestee into his office so that he could obtain his keys).
 {¶ 13} Here, Officer McGaw escorted defendant into his apartment so that he could lock his door and refrigerate his beer. At that time, Officer McGaw had arrested defendant, and thus, he had every right to follow defendant into the apartment. Furthermore, contrary to defendant's argument, Officer McGaw did not need defendant's consent to enter the apartment. "[An] officer's authority to monitor a suspect does not depend upon the suspect's consent; a suspect under arrest has no right to wander off on his own." Berkowitz, 1389. *Page 6 
 {¶ 14} Defendant next argues that even if Officer McGaw could enter his apartment, the officer could not lawfully search his refrigerator. Because Officer McGaw's search of the refrigerator was conducted incident to defendant's arrest, we disagree.
 {¶ 15} As the United States Supreme Court held in New York v.Belton (1981), 453 U.S. 454, 457, 101 S.Ct. 2860:
 [A] lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need `to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence.
Id., quoting Chimel, 763. Moreover, the right to conduct a search incident to arrest exists even if the area searched is no longer accessible to the arrestee at the time of the search. "So long as the defendant had the item within his immediate control near the time of his arrest, the item remains subject to a search incident to arrest."Northrop v. Trippett (C.A.6, 2001), 265 F.3d 372, 379. See, also,United States v. Poole (C.A.6, 2005), 407 F.3d 767, 773 ("A search incident to arrest may encompass the areas that would be within the defendant's reach, even when the defendant is restrained."); UnitedStates v. Morales (C.A.8, 1991), 923 F.2d 621, 626 ("`[A]ccessbility, as a practical matter, is not the benchmark' in assessing the validity of a search incident to arrest.").
 {¶ 16} Thus, in State v. Washington (May 1, 2001), Franklin App. No. 00AP-663, this court held that a police officer's search of the purse that a defendant carried at the time of her arrest was constitutional, even though the defendant was secured in the backseat of a police cruiser when the search occurred. See, also, United States v.Romero (C.A.6, 2006), 452 F.3d 610, 619-620 (officers could lawfully search a nightstand *Page 7 
a couple of feet from the defendant when he was arrested, despite the defendant being restrained prior to the search); State v.Henderson, Warren App. No. CA2002-08-075, 2003-Ohio-1617, at ¶ 14 (search of a shaving kit a "few feet away" from the defendant at the time of his arrest was constitutional, although the defendant was handcuffed and lying on the floor when the search occurred); State v.Sharpe (June 30, 2000), Harrison App. No. 99 CA 510 (officers could search a backpack that they removed from the defendant when they arrested and handcuffed him).
 {¶ 17} In the case at bar, Officer McGaw allowed defendant to access the refrigerator while he was under arrest. Although Officer McGaw secured defendant prior to searching the refrigerator, the search was constitutionally permissible because defendant had "immediate control" over the refrigerator while arrested. Further, suppressing the evidence that Officer McGaw found would frustrate one of the two purposes behind the "search incident to arrest" exception — to prevent the concealment of evidence. Therefore, we conclude that Officer McGaw conducted a valid search incident to arrest.
 {¶ 18} In sum, neither Officer McGaw's presence in the apartment nor his search of the refrigerator violated constitutional law. Accordingly, we overrule defendant's first assignment of error.
 {¶ 19} We next turn to appellant's second and third assignments of error. As they both challenge the sufficiency of the evidence, we will address them together. The operative inquiry in a sufficiency of the evidence analysis is whether the evidence is adequate to sustain a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387. When reviewing the sufficiency of the evidence, an appellate court must: *Page 8 
 [E]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. This test raises a question of law and does not allow the court to weigh the evidence. Thompkins, 386; State v. Thomas (1982), 70 Ohio St.2d 79,79-80. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, when reviewing the sufficiency of the evidence, an appellate court must accept the fact finder's determination with regard to the credibility of the witnesses.State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79;State v. Worrell, Franklin App. No. 04AP-410, 2005-Ohio-1521, at ¶ 41
("In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction.").
 {¶ 20} A defendant is guilty of violating R.C. 2925.11 if he "knowingly obtain[s], possesses], or use[s] a controlled substance." R.C. 2925.11(A). Defendant contends that the evidence does not prove that he ever possessed the cigarette pack in which Officer McGaw found the crack cocaine. Defendant points out that the refrigerator contained three cigarette packs and asserts that, as the refrigerator door obstructed Officer McGaw's view, he could not be sure that the cigarette pack with the cocaine was the same pack defendant put in the refrigerator. Officer McGaw, however, testified that *Page 9 
he was "positive" that the cigarette pack he recovered from the refrigerator was defendant's pack. Officer McGaw was standing only three or four feet from defendant when he put the cigarette pack in the refrigerator. Officer McGaw saw defendant pull a cigarette pack from his pants pocket and put that pack in the main section of the refrigerator. Although two other cigarette packs were in the refrigerator, both packs were in the butter compartment on the refrigerator door. Officer McGaw testified that he retrieved the only pack in the main section of the refrigerator — the place where he saw defendant previously put the pack.
 {¶ 21} Additionally, Officer McGaw stated that the cigarette pack that he recovered was still warm to the touch, suggesting that it had only been in the refrigerator a short time. Defendant attacks Officer McGaw's credibility on this point, claiming that a cigarette pack refrigerated for three to five minutes would not be warm. We, however, cannot weigh the credibility of a witness's testimony when determining whether the evidence is sufficient to support the verdict.
 {¶ 22} In light of Officer McGaw's testimony, we conclude that the state presented sufficient evidence to convince a rational fact finder of defendant's guilt. Accordingly, we overrule defendant's second and third assignments of error.
 {¶ 23} By appellant's fourth assignment of error, he argues that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 24} When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a *Page 10 
manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional cases in which the evidence weighs heavily against conviction.'" Id.
 {¶ 25} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v.Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28.
 {¶ 26} Defendant correctly asserts that Officer McGaw testified inconsistently regarding whether or not he could see inside the refrigerator. During direct examination, Officer McGaw stated that he saw defendant put the cigarette pack on the top shelf of the refrigerator. On cross examination, Officer McGaw conceded that he could not recall whether he could see inside the refrigerator, but probably saw the "top part" of it. Either way, Officer McGaw knew from defendant's movements that he placed the cigarette pack in the main portion of the refrigerator. According to Officer McGaw, defendant never moved toward the refrigerator door or lifted the lid of the butter compartment (where the *Page 11 
two other cigarette packs were stored). The cigarette pack Officer McGaw retrieved was the only pack in the main portion of the refrigerator, so logically, it was the pack he saw defendant put in the refrigerator. Consequently, we do not find that the inconsistency warrants a reversal on manifest weight grounds.
 {¶ 27} Similarly, we do not find that the inconsistencies between Officer McGaw's and defendant's version of events warrant a reversal. Most significantly, defendant testified that he believed that Officer McGaw set him up, although defendant never specified how or why this "setup" occurred. Like the jury, we find Officer McGaw more credible than defendant. Accordingly, we overrule defendant's fourth assignment of error.
 {¶ 28} By his fifth assignment of error, defendant argues that the trial court erred when it denied his motion for a new trial. We disagree.
 {¶ 29} First, defendant's failure to comply with the requirements contained in Crim.R. 33(B) gave the trial court a sufficient ground upon which to deny the motion without any consideration of its merits. Pursuant to Crim.R. 33(B):
 Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.
Necessarily then, Crim.R. 33(B) requires a two-step process for filing an untimely motion for new trial. State v. Lei, Franklin App. No. 05AP-288, 2006-Ohio-2608, at ¶ 22; State v. Lordi, 149 Ohio App.3d 627,2002-Ohio-5517, at ¶ 25. If a defendant wishes to file a motion for new trial for any reason except newly discovered evidence after the 14-day *Page 12 
deadline, the defendant must first seek leave of court to file the delayed motion. Id. If the trial court grants leave, the defendant must then file the motion for new trial. Id.
 {¶ 30} Here, defendant moved for a new trial on the basis of Crim.R. 33(A)(2), "misconduct of the jury * * *." Consequently, Crim.R. 33(B) required defendant to file his motion for new trial no later than December 18, 2006 — 14 days after the jury rendered its verdict. Defendant, however, did not file his motion until January 10, 2007. Defendant neglected to seek leave of court to file the untimely motion, and thus, the trial court could have denied it outright on that basis. See, e.g., State v. Cham, Franklin App. No. 05AP-1288, 2007-Ohio-378, at ¶ 6; State v. Tolliver, Franklin App. No. 02AP-811, 2004-Ohio-1603, at ¶ 117.
 {¶ 31} Additionally, defendant's motion fails upon its merits because it is based
 upon inadmissible evidence. Evid.R. 606(B), the aliunde rule, governs the competency of a juror to testify in a subsequent proceeding regarding the original verdict. Pursuant to Evid.R. 606(B): Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented.
Thus, Evid.R. 606(B) preserves the sanctity of jury deliberations by declaring jurors generally incompetent to testify about the deliberations themselves or about matters influencing a juror's decision or decision-making processes. State v. Schiebel (1990), *Page 13 55 Ohio St.3d 71, 75. Although a party may use juror testimony to impeach a verdict in certain circumstances, that party must first establish a foundation of extraneous, independent evidence; i.e., evidence obtained from non-juror sources. Id.; State v. Hessler, 90 Ohio St.3d 108, 123,2000-Ohio-30. In other words, "[o]ne juror's affidavit alleging misconduct of another juror may not be considered without evidence aliunde being introduced first." Schiebel, 75.
 {¶ 32} In the case at bar, defendant's reason for seeking a new trial is premised solely upon the affidavit testimony of one juror regarding another juror's misconduct. According to the affidavit of Mark Hatcher, a juror in the instant case, the jury foreman told the other jurors that he had discussed the case with a police officer. Because defendant failed to present any evidence aliunde of the jury foreman's misconduct, Juror Hatcher's affidavit testimony was incompetent and could not serve as a basis for granting defendant a new trial. See, e.g., State v.Braden, Franklin App. No. 02AP-954, 2003-Ohio-2949, at ¶ 38-39 (trial court could not consider a juror's affidavit testimony that another juror had conducted an independent investigation because no evidence aliunde existed). Accordingly, we find that the trial court properly denied defendant's motion for a new trial, and we overrule defendant's fifth assignment of error.
 {¶ 33} For the foregoing reasons, we overrule defendant's first, second, third, fourth, and fifth assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 SADLER, P.J., and TYACK, J., concur. *Page 1