[Cite as *State v. Johnson*, 2017-Ohio-5527.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                          :

      Plaintiff-Appellee,            :

                                No. 16AP-689

v.                                      :          (C.P.C. No. 15CR-5562)

Nicholas M. Johnson,                    :          (REGULAR CALENDAR)

      Defendant-Appellant.           :

---

D E C I S I O N

Rendered on June 27, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *James H. Banks*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1}  Defendant-appellant, Nicholas M. Johnson, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of trafficking in drugs, in violation of R.C. 2953.03.  For the reasons that follow, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}  On November 4, 2015, Franklin County Sheriff's Deputy Travis Carter arrested appellant for heroin possession following a traffic stop.  On November 13, 2015, a Franklin County Grand Jury indicted appellant for trafficking in heroin, in violation of R.C. 2925.03, a felony of the first degree.

{¶ 3}  On December 31, 2015, appellant filed a motion to suppress the evidence discovered by police in the warrantless search of his person.  Plaintiff-appellee, State of

Ohio, did not file a written memorandum in opposition. The trial court conducted an evidentiary hearing on the motion on July 28, 2016. The facts underlying appellant's arrest are set out in the testimony at the suppression hearing. Detective John C. Whitacre testified that he was a 23-year veteran of the Columbus Division of Police who had been working on the narcotics squad since 2013. Whitacre testified that in September 2015, he began investigating a group of individuals who allegedly operated a narcotics ring on the east side of Columbus. According to Whitacre, he received information through informants regarding the names, addresses, and vehicles used by the suspects. Whitacre subsequently obtained a court order to install GPS monitors on the suspect vehicles. As a result of surveillance, Whitacre's team arrested several suspects on the east side of Columbus on heroin trafficking charges.

{¶ 4} Whitacre testified that the members of a suspected heroin trafficking ring on the west side of Columbus subsequently began using the same vehicles. After obtaining another warrant, Whitacre's team began surveilling individuals suspected of drug trafficking. As a result of the continued surveillance, Whitacre's team subsequently made several arrests and recovered large sums of cash and narcotics from various individuals. One of the individuals identified by Whitacre's team as a member of the drug trafficking ring was Ivan Navarro. The police suspected Navarro was delivering drugs to individuals he met briefly in certain public parking lots. On October 22, 2015, police followed Navarro to a Walmart parking lot on Rome-Hilliard Road, where he parked next to a pickup truck with no visible registration tag. The driver of the pickup truck approached Navarro's vehicle and retrieved a box, which he placed in his pickup truck. A state trooper followed the pickup truck when it left the parking lot and stopped it. It was discovered that the box contained $29,000 in cash.

{¶ 5} On November 4, 2015, Navarro arrived at the same Walmart parking lot and parked next to a 2006 Lexus, which displayed no front license plate. Police observed the driver of the vehicle, later identified as appellant, enter Navarro's vehicle, stay for a short time, and then return to his vehicle. Though the surveillance team did not see an exchange between the two men, they suspected a drug transaction had taken place. Whitacre testified that he instructed the surveillance team, which included Detective Mark Johnson, to follow appellant's vehicle as it left the parking lot. Johnson testified

that he followed appellant's vehicle on I-270, but he backed off when he saw a marked Franklin County Sheriff's vehicle come up behind appellant's vehicle. Johnson did not observe the subsequent traffic stop.

{¶ 6} Carter, a 16-year veteran of the Franklin County Sheriff's Department, made the traffic stop of appellant's vehicle. Carter testified that because he was a member of the High Intensity Drug Trafficking Area ("HIDTA") Task Force, he was able to receive a transmission over the encrypted walkie-talkie system from a Sergeant Biney asking if there were any officers in the vicinity of I-270 and Georgesville Road. When Carter responded, Biney told him that Whitacre requested a traffic stop of a vehicle failing to display a front license plate and possibly containing evidence of illegal narcotics. After obtaining a description of the suspect vehicle and its location, Carter came up behind the suspect's vehicle after it exited I-270 and initiated a traffic stop.

{¶ 7} According to Carter, he approached appellant's vehicle on the passenger side, asked appellant for his license and vehicle registration, and instructed appellant to get out of the vehicle. Carter walked around the back of appellant's vehicle and met appellant at the rear of the vehicle. Carter asked appellant if he had any weapons and he responded that he did not. When Carter asked appellant for permission to conduct a pat-down search for weapons, appellant responded "[y]es." (July 28, 2016 Tr. at 45.) As Carter began patting down appellant, he noticed a bulge in appellant's right front pants pocket. When Carter asked appellant what it was, "he fled on foot." (Tr. at 46.) Carter gave chase and caught up with appellant when he stumbled and fell in the parking lot of a Certified gas station. Carter placed appellant in handcuffs and then "searched all pockets incident to arrest and found a large bag of what appeared to be brown powder heroin in his right front pocket." (Tr. at 46.)

{¶ 8} Detective Clint A. Smith subsequently arrived at the scene of the arrest and conducted an interview of appellant who was handcuffed in the back of a police cruiser. During the interview, appellant admitted that he was a heroin user and that the heroin found on his person was intended for his own personal use. Appellant denied that he sold drugs. Smith subsequently authored a report regarding the events leading to appellant's arrest and interrogation. Smith's HIDTA Task Force Report ("report") was admitted into evidence as Defendant's Exhibit 1.

{¶ 9}  Immediately following the hearing on appellant's motion to suppress, the trial court announced its decision denying the motion.  Appellant subsequently pleaded no contest to the charge in the indictment.  On September 8, 2016, the trial court sentenced appellant to a prison term of three years, suspended appellant's driver's license for six months, and imposed a monetary sanction of $20,000.

{¶ 10} Appellant timely appealed to this court from his conviction and sentence.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellant sets forth the following assignments of error:

> [1.] THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
>
> [2.] THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT.

## III. STANDARD OF REVIEW

{¶ 12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of fact finder and, accordingly, is in the best position to resolve factual questions and evaluate witness credibility." *Columbus v. Body*, 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  "As such, an appellate court must accept the trial court's factual findings if they are supported by competent, credible evidence." *Body* at ¶ 9, citing *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  "However, after accepting those facts as true, an appellate court 'must independently determine, whether the facts satisfy the applicable legal standard, without giving any deference to the conclusion of the trial court.' " *State v. Drake*, 10th Dist. No. 16AP-258, 2017-Ohio-755, ¶ 12, quoting *State v. Holland*, 10th Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 8, citing *Burnside* at ¶ 8.

## IV.  LEGAL ANALYSIS

### A.  First Assignment of Error

{¶ 13} In appellant's first assignment of error, appellant contends that the trial court erred when it denied his motion to suppress the evidence uncovered in the warrantless search of his person, as well as the statements made by appellant at the scene.

{¶ 14} "A motion to suppress evidence challenges the warrantless search and seizure at issue as being in violation of the Fourth Amendment of the United States Constitution and Article I of the Ohio Constitution." *State v. Hannah*, 10th Dist. No. 15AP-12, 2015-Ohio-4964, ¶ 12, citing *State v. Lynch*, 196 Ohio App.3d 420, 2011-Ohio-5502 (8th Dist.), citing *State v. Williams*, 8th Dist. No. 81364, 2003-Ohio-2647, ¶ 7.  The Fourth Amendment to the United States Constitution, as well as Article I, Section 14 of the Ohio Constitution, prohibits unreasonable searches and seizures rendering them per se unreasonable unless an exception applies.  *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998).  "One such exception, recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), permits a police officer to 'stop or detain an individual without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot.' "  *State v. Pinckney*, 10th Dist. No. 14AP-709, 2015-Ohio-3899, ¶ 18, quoting *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16 (10th Dist.).  The purpose of the limited search authorized by *Terry* " 'is not intended to discover evidence of a crime, but to allow the officer to pursue his duties "without fear of violence." ' "  *Pinckney* at ¶ 18, quoting *State v. Cordell*, 10th Dist. No. 12AP-42, 2013-Ohio-3009, ¶ 13, quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972).

{¶ 15} The holding in *Terry* has been extended to automobile stops.  *State v. Hines*, 92 Ohio App.3d 163, 167 (10th Dist.1993).  Under *Terry*, "[p]olice may frisk people for weapons during a traffic stop if there is a reasonable belief that they may be armed." *Hines* at 167, citing *Pennsylvania v. Mimms*, 434 U.S. 106 (1977).  "An officer may initiate a protective search when, based on the totality of the circumstances, there is a reasonable suspicion the person is armed."  *Hines* at 167, citing *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph two of the syllabus.

{¶ 16} In addition to the stop-and-frisk doctrine under *Terry*, the Supreme Court of Ohio has recognized that "consent signifying waiver of constitutional rights" is also an

exception to the search warrant requirement. *State v. Alihassan*, 10th Dist. No. 11AP-578, 2012-Ohio-825, ¶ 8, citing *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51 (1985). To establish the consent exception to the probable cause and warrant requirements the state has the burden of establishing by clear and positive evidence that consent was freely and voluntarily given. *State v. Posey*, 40 Ohio St.3d 420, 427 (1988), citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968).

{¶ 17} Appellant first contends that Carter violated appellant's constitutional rights by initiating the traffic stop without a reasonable suspicion that appellant was involved in criminal activity. We disagree.

{¶ 18} To legitimately effectuate a traffic stop, an officer must have a reasonable and articulable suspicion of criminal activity. *State v. Young*, 6th Dist. No. E-13-011, 2015-Ohio-398, ¶ 21, citing *State v. Hageman*, 180 Ohio App.3d 640, 2009-Ohio-169, ¶ 11 (6th Dist.). "Once the officer has initiated the stop, he or she may detain the vehicle no longer than is necessary to carry out the purpose of the stop which typically amounts to 'a time period sufficient to issue a ticket or a warning.' " *Young* at ¶ 21, quoting *State v. Kelly*, 188 Ohio App.3d 842, 2010-Ohio-3560, ¶ 25 (12th Dist.).

{¶ 19} R.C. 4503.21(A) provides, in relevant part, that "[n]o person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker." Ohio courts have held that an officer's observation of an R.C. 4503.21(A) violation provides a reasonable suspicion justifying a *Terry* stop. *Columbus v. Gullick*, 10th Dist. No. 07AP-520, 2008-Ohio-3168, ¶ 13. *See also Young* at ¶ 26; *State v. Phillips*, 2d Dist. No. 22918, 2009-Ohio-3519; *State v. Craze*, 5th Dist. No. 09 COA 017, 2010-Ohio-812; *State v. Cromes*, 3d Dist. No. 17-06-07, 2006-Ohio-6924; *State v. Brooks*, 11th Dist. No. 2005-L-200, 2007-Ohio-344. Here, the evidence reveals that Carter is a member of the HIDTA Task Force and that just prior to the traffic stop, he received information over the encrypted walkie-talkie system that the HIDTA Task Force was investigating appellant for suspected illegal drug activity and that appellant was driving his vehicle without a front license plate. Carter was informed that Whitacre had requested a traffic stop.

{¶ 20} Appellant argues that the absence of a front license plate could not have provided a justification for the traffic stop because Carter admitted, on cross-examination, that he initiated the traffic stop before confirming that the violation occurred.  The trial court disagreed, citing the decision of this court in *State v. Muldrow*, 10th Dist. No. 15AP-1119, 2016-Ohio-4774.  The trial court determined that the information communicated to Carter by and through the members of the HIDTA Task Force provided a reasonable suspicion to justify a *Terry* stop under the collective knowledge doctrine.  We agree.

{¶ 21} In *Muldrow*, this court stated that under "the 'collective knowledge doctrine,' * * * knowledge of law enforcement officers is imputed to other officers."  *Id.* at ¶ 18.  This court explained the doctrine as follows:

> The collective knowledge doctrine recognizes that "[a] police officer need not always have knowledge of the specific facts justifying a stop and may rely, therefore, upon a police dispatch or flyer."  *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999 Ohio 68, 720 N.E.2d 507 (1999), citing *United States v. Hensley*, 469 U.S. 221, 231, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985).  "[T]he admissibility of the evidence uncovered during such a stop does not rest upon whether the officers *relying upon a dispatch or flyer* 'were themselves aware of the specific facts which led their colleagues to seek their assistance.'  It turns instead upon 'whether the officers who issued the flyer' or dispatch possessed reasonable suspicion to make the stop.' "

(Emphasis sic.)  *Id.*

{¶ 22} In this instance, Whitacre personally observed appellant's Lexus in the Walmart parking lot and he was able to determine that the vehicle did not have a front license plate.  Based on the registration information Whitacre could see, he was able to learn the name of the vehicle owner and he forwarded that information to other members of his team along with the description of the vehicle.  As Johnson followed appellant's vehicle after it left the Walmart parking lot, he "began airing over the radio his location," and he was able to confirm the license plate violation.  (Tr. at 59.)  Carter testified that Biney, via the HIDTA Task Force encrypted walkie-talkie system, "asked if anyone was in the area of 270 and Georgesville Road on the west side of Franklin County."  (Tr. at 44.)  Biney informed Carter that Whitacre "wanted me to stop a vehicle that was possibly

involved in narcotics activity [and] did not have a front license plate." (Tr. at 45.) Thus, the evidence in the record establishes that Carter received information regarding the suspected narcotics activity involving appellant's vehicle and the license plate violation through Whitacre, who had personally observed the license plate violation. Under *Muldrow*, it does not matter that Carter did not observe the equipment violation prior to initiating the traffic stop or that he did not speak directly with Whitacre.

{¶ 23} Appellant argues that *Muldrow* is distinguishable because the defendant in that case had been a suspect in an ongoing narcotics investigation and had been observed leaving a residence which was the subject of a search warrant, whereas appellant had not previously been suspected of involvement in the narcotics activity being investigated by the HIDTA Task Force. We agree that *Muldrow* is not on all fours with the present case. Nevertheless, we find that the logic of the collective knowledge doctrine applies with equal weight to this case inasmuch as the critical fact justifying the *Terry* stop in this case was the equipment violation observed by Whitacre and reported to Carter through the members of the HIDTA Task Force.

{¶ 24} The crux of the collective knowledge doctrine is that knowledge of law enforcement officers is imputed to other officers. *Muldrow* at ¶ 18. Under *Muldrow*, where an officer making an investigative stop relies solely on information provided in a dispatch, a *Terry* stop is constitutionally valid provided the state demonstrates at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. *Muldrow* at ¶ 21. Here, the relevant information regarding the description of appellant's vehicle and the absence of a front license plate were observed by Whitacre and communicated to Carter via other members of the HIDTA Task Force. The license plate violation provided a legal justification for the traffic stop. Whether the additional information regarding the suspected narcotics transaction would have justified a reasonable suspicion of drug possession is neither relevant nor dispositive of the legality of the traffic stop in this case.

{¶ 25} Appellant next contends that the equipment violation was merely a pretext for conducting an illegal narcotics investigation given Carter's admission that he stopped appellant's vehicle with the intent to conduct an investigation into illegal drug activity. However, the Supreme Court has stated that "[w]here a police officer stops a vehicle based

on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus. *See also State v. Ewing*, 10th Dist. No. 09AP-776, 2010-Ohio-1385, ¶ 16; *State v. Stokes*, 10th Dist. No. 07AP-960, 2008-Ohio-5222, ¶ 29. Because we have determined that the equipment violation observed by Whitacre's team and communicated to Carter provides a justifiable reason for initiating a *Terry* stop of appellant's vehicle, Carter's subjective intent in making the traffic stop is irrelevant to the Fourth Amendment analysis. *Erickson*; *Ewing*; *Stokes*.

{¶ 26} Appellant next contends that Carter detained appellant for a longer period of time than was necessary to conduct a traffic stop for purposes of a license plate violation. The evidence in the record does not support appellant's contention.

{¶ 27} Carter provided the following testimony regarding the traffic stop:

> I approached the vehicle and the driver, [appellant], asked him for his license and registration, had him go ahead and step out of the vehicle. He approached to the rear of the vehicle, and I asked him if he had any weapons on him. He stated, "No." I asked if I could pat him down for weapons. He said, "Yes."
>
> As I began to pat him down, I did notice a bulge in his front right pocket and I proceeded to ask what that was when he fled on foot basically in kind of a northeast direction into an open field behind a gas station. It's a Certified Gas Station on Alkire and Holt. As [appellant] was running he stumbled and I was able to apprehend him without incident after he had stumbled.
>
> After I placed him in handcuffs I searched all pockets incident to arrest and found a large bag of what appeared to be brown powder heroin in his right front pocket.

(Tr. at 45-46.)

{¶ 28} "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment." *Mimms* at 111, n. 6. However, even with consent, *Terry* requires that "[a]

search for weapons in the absence of probable cause to arrest * * * must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." *Id.* at 25-26. Carter estimated that the elapsed time between asking appellant to exit his vehicle and requesting permission to conduct a pat-down search for weapons was "30 to 45 seconds at the most." (Tr. at 47.) Carter considered this to be a "normal" period of time for such a traffic stop. (Tr. at 47.) There is no evidence in the record to rebut Carter's recollection of the traffic stop. Accordingly, there is no support in the record for appellant's contention that Carter unreasonably extended the duration of the traffic stop in order to investigate suspected drug possession. According to Carter, appellant gave his consent for a pat-down search for weapons just 30 to 45 seconds after he asked appellant to exit the vehicle.

{¶ 29} Appellant contends, however, that his consent to a pat-down search for weapons was not voluntary. In *State v. Limoli*, 10th Dist. No. 11AP-924, 2012-Ohio-4502, this court set out the test for determining whether, in the context of a traffic stop, a person's consent to a pat-down search for weapons is voluntary. This court stated:

> In determining the voluntariness of consent to a search, a court must apply a different standard when a consent is given during a lawful police detention as opposed to an unlawful detention. When a person is *lawfully detained* by police and consents to a search, the state must show by clear and convincing evidence that the consent was freely and voluntarily given. Important factors in determining the voluntariness of consent are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

(Emphasis sic.) (Citation and internal quotations omitted.) *Id.* at ¶ 22.

{¶ 30} Our review of the evidence in the record supports the trial court's conclusion that appellant's consent to the pat-down search was voluntary. We have determined that the initial traffic stop was lawful due to the equipment violation. The evidence establishes that appellant gave his consent for the pat-down search only 30 to 45 seconds after Carter instructed him to exit his vehicle. There is no evidence that appellant

resisted Carter's request to exit the vehicle or that he was otherwise uncooperative. There is no evidence that Carter employed coercive tactics in order to obtain consent to search. Thus, the record contains clear and convincing evidence that appellant's consent to a pat-down search for weapons was freely and voluntarily given.

{¶ 31} Finally, appellant argues that Carter's search of appellant following the foot chase was illegal because appellant had not committed an arrestable offense. Carter testified as follows:

> Q. When he ran off, did you say anything to him?
>
> A. I yelled at him to stop running, and he did not comply.
>
> Q. Was that some kind of a crime to do that?
>
> A. Yes. It's an obstruction.
>
> Q. Is it an arrestable offense?
>
> A. Yes.

(Tr. at 48.)

{¶ 32} R.C. 2921.31(A) defines the offense of obstructing official business as follows:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶ 33} Ohio appellate authority, including authority from this district, holds that fleeing from a police officer who is lawfully attempting to detain a suspect under the authority of *Terry* is an affirmative act that hinders or impedes the officer in the performance of the officer's duties and constitutes a violation of R.C. 2921.31, obstructing official business. *State v. Harris*, 10th Dist. No. 05AP-27, 2005-Ohio-4553, ¶ 16. *See also State v. Lewis*, 2d Dist. No. 27152, 2017-Ohio-1195, ¶ 12; *State v. Willis*, 12th Dist. No. CA2012-08-155, 2013-Ohio-2391; *State v. Certain*, 180 Ohio App.3d 457, 2009-Ohio-148 (4th Dist.); *State v. Dice*, 3d Dist. No. 9-04-41, 2005-Ohio-2505; *State v. Hasley*, 7th Dist. No. 03 MA 215, 2004-Ohio-7065; *State v. Jackson*, 1st Dist. No. C-990371 (Apr. 14,

2000). Because the evidence shows that appellant fled a lawful traffic stop, Carter had probable cause to arrest appellant for obstructing official business. *Harris.* "A search incident to arrest is not only an exception to the warrant requirement; it is also a reasonable search under the United States and Ohio Constitutions." *State v. White*, 10th Dist. No. 07AP-246, 2007-Ohio-7143, ¶ 11, citing *United States v. Robinson*, 414 U.S. 218, 235 (1973); *State v. Mathews*, 46 Ohio St.2d 72, 74-75 (1976). Because appellant committed an arrestable offense when he fled from the lawful *Terry* stop, the search of appellant's person following his apprehension was constitutionally reasonable as a search incident to arrest. *White.*

{¶ 34} For the foregoing reasons, we find that Carter did not violate appellant's Fourth Amendment rights by conducting the traffic stop in question and searching appellant's person. Accordingly, we hold that the trial court did not err when it denied appellant's motion to suppress the evidence discovered in the warrantless search of appellant's person.

{¶ 35} In his motion to suppress, appellant also sought to exclude the statements he made to Smith claiming that he made the statements before being advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The evidence in the record belies appellant's claim. Smith's report reveals the following:

> Detective Smith conducted the interview of [appellant] in the presence of Deputy Carter while he was secured in the rear of the F.C.S.O. marked vehicle. Detective Smith read the Miranda warning to [appellant]. [Appellant] stated that he would talk to Detective Smith but did not want to sign the rights waiver form. Verbal consent was given in front of Detective Smith and Deputy Carter, who signed the rights waiver form as witness to his verbal consent. The contents of the interview are as follows:
>
> -[Appellant] hoped to escape by running
> -The heroin in his pocket was for personal use
> -He does not sell heroin
> -The heroin was to support his habit
> -That amount of heroin would last him a month
> -He didn't want to talk anymore if there was no opportunity to not go to jail.

> The interview was concluded, and [appellant] was transported and slated by F.C.S.O.

(Defendant's Ex. 1.)

{¶ 36} Smith's written report establishes that appellant made the statements attributed to him after he received *Miranda* warnings. There is no evidence in the record contradicting the information in the report regarding the *Miranda* warnings. Thus, there is no support for appellant's contention that police violated his *Miranda* rights.

{¶ 37} For the foregoing reasons, we hold that the trial court did not err when it denied appellant's motion to suppress the evidence uncovered in the search of appellant's person and the initial interrogation by police. Accordingly, appellant's first assignment of error is overruled.

## B. Second Assignment of Error

{¶ 38} In appellant's second assignment of error, appellant argues that the trial court erred and abused its discretion by imposing a fine of $20,000. We disagree.

{¶ 39} Appellant first contends that the trial court misconstrued the relevant statutory law when it imposed a $20,000 fine. R.C. 2929.18 pertaining to "[f]inancial sanctions," provides, in relevant part, as follows:

> (A)(3) Except as provided in division (B)(1), (3), or (4) of this section, a fine payable by the offender to the state, to a political subdivision when appropriate for a felony, or as described in division (B)(2) of this section to one or more law enforcement agencies, in the following amount:
>
> (a) *For a felony of the first degree, not more than twenty thousand dollars*;
>
> * * *
>
> (B)(1) For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, *the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section.* If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an

> indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.

(Emphasis added.)

{¶ 40} Because the trial court convicted appellant of a first-degree felony under R.C. 2929.18, a $10,000 fine is mandatory. Appellant contends that the trial transcript shows that the trial court believed that the mandatory fine was $20,000. The transcript of the sentencing hearing provides as follows:

> [Prosecuting Attorney:] It's my understanding he's wishing to withdraw his formerly entered plea of not guilty and enter a plea of no contest to that offense, trafficking in heroin, as a felony of the first degree.
>
> That offense is punishable by up to three years to eleven years of mandatory incarceration in the Ohio Department of Rehabilitation, *up to a $20,000 fine*, which is a mandatory fine, five years of mandatory post-release control when incarcerated and a mandatory Bureau of Motor Vehicle driver's license suspension for not less than six months nor more than five years.
>
> * * *
>
> THE COURT: All right. By signing this document, you're pleading no contest to the count of trafficking in heroin. That's a felony in the first degree. That carries a mandatory prison sentence from three to eleven years and a mandatory fine of $20,000. You're not eligible for probation. You have to go to prison because it's mandatory.

(Emphasis added.) (Sept. 6, 2016 Tr. at 8, 10.)

{¶ 41} The September 6, 2016 "Entry of No Contest Plea" signed by appellant, his trial counsel, and the trial court correctly identifies the fine for appellant's offense as "up to $20,000" and further identifies the mandatory portion of the fine as "at Least One-Half of the Maximum for the Underlying Offense." Though language used by the trial court at the sentencing hearing and in the subsequent judgment entry suggest that the trial court may have believed a $20,000 fine was mandatory, the trial court was aware that there is a

mandatory fine for appellant's offense of "up to" $20,000. Accordingly, the record does not disclose a legal error with regard to the amount of the fine.

{¶ 42} Appellant next contends that the trial court erred by failing to consider his ability to pay the fine. We disagree.

{¶ 43} Appellant pleaded no contest to the indictment and the trial court proceeded immediately to sentencing. Consequently, there was no presentence investigation. Appellant did not file an affidavit with the trial court prior to sentencing alleging that he is indigent and unable to pay the mandatory fine. R.C. 2929.18(B)(1). Because appellant did not file an affidavit of indigence alleging he is "unable to pay the mandatory fine," the trial court was required to impose a fine on appellant of at least $10,000, one-half of the $20,000 authorized by statute. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 79 (10th Dist.), citing *State v. Gipson*, 80 Ohio St.3d 626 (1998); *State v. Burnett*, 10th Dist. No. 08AP-304, 2008-Ohio-5224, ¶ 9.

{¶ 44} The only evidence in the record regarding appellant's ability to pay is statements made by the prosecutor and defense counsel at the sentencing hearing. The transcript of the sentencing hearing reveals appellant is 31 years old, he works at Buffalo Wild Wings, has two children (ages 9 and 13), and he purchased the heroin found in his possession at an estimated price of $6,000 for 160 grams. According to the prosecutor, 160 grams of heroin results in a minimum of 1,500 doses. The prosecutor did not estimate the street value of the heroin seized from appellant, but he did opine that the amount of heroin appellant purchased made him "a pretty high-level drug dealer." (Tr. at 19.) Appellant will be 34 years old on completion of a three-year sentence.

{¶ 45} "[T]he burden is upon the offender to affirmatively demonstrate that he or she is indigent and is *unable to pay* the mandatory fine." (Emphasis sic.) *Gipson* at 635. A trial court need only consider whether the defendant has the ability to pay a fine, "a trial court need not affirmatively find that an offender is able to pay." *State v. Plemons*, 2d Dist. No. 26434, 2015-Ohio-2879, ¶ 8. This court reviews a trial court's decision on an offender's present and future ability to pay a mandatory fine for an abuse of discretion. *State v. Small*, 10th Dist. No. 14AP-659, 2015-Ohio-3640, ¶ 40.

{¶ 46} R.C. 2929.19(B)(5) states that "[b]efore imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code,

the court shall consider the offender's present and future ability to pay the amount of the sanction or fine."  The trial court's judgment entry provides, in relevant part, as follows:

> The Court has considered the Defendant's present and future ability to pay a fine and financial sanction and does, pursuant to R.C. 2929.18, hereby render judgment for the following fine and/or financial sanctions: **Defendant shall pay a mandatory fine in the amount of $20,000. Defendant shall pay court costs in an amount to be determined**.

(Emphasis sic.)  (Sept. 8, 2016 Jgmt. Entry at 2.)

{¶ 47} Because appellant failed to submit an R.C. 2929.18(B)(1) affidavit and because the judgment entry states that the court "considered" appellant's ability to pay, the record discloses no error or abuse of discretion on the part of the trial court with regard to the fine.  *Pilgrim* at ¶ 80 ("Because the record lacks evidence showing defendant's inability to pay the mandatory fine the trial court imposed, defendant did not carry his burden to affirmatively demonstrate his inability to pay the mandatory fine.").  Moreover, the record contains some evidence to support a finding that appellant has the present and future ability to pay the fine.

{¶ 48} For the foregoing reasons, appellant's second assignment of error is overruled.

## V.  CONCLUSION

{¶ 49} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.

_____