OPINION
{¶ 1} Defendant-appellant, Christopher Perry, appeals his conviction in the Preble County Court of Common Pleas for possession of cocaine and possession of criminal tools. On appeal, he argues that the court erred in denying his motion to suppress evidence and ordering him to pay court-appointed attorney fees. We affirm the decision of the trial court.
 {¶ 2} On May 3, 2004, Ohio State Highway Patrol Trooper Shaun Smart observed appellant's vehicle traveling eastbound on U.S. Interstate 70 followed by a semi tractor-trailer. As Trooper Smart observed the vehicle, appellant slowed to a rate of 55 m.p.h. in a 65 m.p.h. zone. He then made four lane changes, three without a turn signal, and closely followed the vehicle in front of him. Trooper Smart, a 13-year veteran specializing in criminal interdiction, grew suspicious. He called for backup to assist in stopping both appellant's vehicle and the semi truck. As Smart's cruiser approached appellant's van to run a license plate check, appellant abruptly exited the interstate, driving through a no-passing portion of the exit ramp. Trooper Smart then initiated the stop of appellant's vehicle.
 {¶ 3} Neither appellant nor his passenger was able to produce an operator's license upon Smart's request. Appellant instead produced a rental agreement for the van. Smart noted that the van was rented under appellant's name in California at a one-day rate, restricted to the California area, and was already a day overdue at the time of the stop in Ohio. Upon questioning, appellant explained that he exited the interstate to go to a gas station, though Trooper Smart noted that appellant had nearly a full tank of gas. Appellant also said that he and his passenger were boyfriend and girlfriend, but changed his story after the passenger stated that they were just friends. Appellant's dubious responses as well as the details of the rental agreement immediately raised the suspicions of Smart, who sought to investigate further. However, about five minutes into the stop, Smart requested that appellant drive his van to the scene of the tractor-trailer stop a half mile away so that Smart could speak to the driver of the semi and ascertain whether he should personally handle that stop. Appellant agreed to the move.
 {¶ 4} After deciding to allow the other officer to conduct the stop of the semi truck, Smart continued to question appellant and his passenger. Smart noted that both appellant and his passenger remained nervous throughout the stop. Smart also found their travel itineraries suspect. Appellant explained that he and his passenger had flown from two different states to two different airports in California. He rented a car and exchanged it for a van at the airport where he picked up his passenger because he claimed the first car was uncomfortable. He also alleged that he stayed in California for two days, which Smart deduced was not possible due to the timeframe in which appellant was stopped by him. Appellant claimed that he had flown to California to meet a boxing coach for whom appellant had no last name, contact information, or meeting arrangements. Also, although appellant insisted that he purchased a one-way airline ticket and rented a car so that he could "see the country," Smart observed that appellant had reserved no time for sightseeing. Taking all of these responses into consideration, Smart believed appellant was lying about the details of his trip.
 {¶ 5} Because Trooper Smart suspected that there were drugs in appellant's van early in the stop and appellant's answers failed to dispel these suspicions, Smart called for a drug dog. The first dog arrived approximately 16 minutes into the stop. The dog twice failed to alert after sniffing around the exterior of the van. When Smart asked appellant if he could place the dog inside the van, appellant neither denied nor gave permission but instead accused Smart of racial profiling. Smart then decided to call a second dog because he was aware that the first dog had failed to alert on a vehicle noticeably carrying marijuana earlier that day. While waiting for the second dog, Smart continued his investigation and issued appellant a citation for following too closely. The second dog arrived approximately 63 minutes into the stop. This dog aggressively alerted along the right-hand side of the van. At this point, Smart felt that he had probable cause to search the van, and determined that a search would be more expeditious and less intrusive than pursuing a search warrant. Upon searching the van he found approximately 500 grams of cocaine in the rear jack compartment of the van. Smart then placed appellant under arrest.
 {¶ 6} Appellant was charged with possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(e), a felony in the first degree, and possession of criminal tools in violation of R.C. 2923.24(A), a felony in the fifth degree. Appellant filed a motion to suppress the evidence seized by Trooper Smart, which was denied by the trial court. Appellant subsequently pled no contest to the charges, was found guilty, and sentenced accordingly. He appeals his conviction, arguing that the trial court wrongly denied his suppression motion, and raising two assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
 {¶ 9} When reviewing a trial court's decision on a motion to suppress, a reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v.McNamara (1997), 124 Ohio App.3d 706, 710. The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 10} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress evidence and raises three issues for our consideration: the illegality of the detention; inapplicability of the inevitable discovery doctrine; and exclusion of the evidence as fruit of the poisonous tree. Appellant does not contest the factual determinations of the trial court, and our review of the record confirms that the trial court's findings of fact are supported by competent, credible evidence. Rather, appellant essentially contends that, given those facts, the trial court erred in finding that Trooper Smart had a reasonable articulable suspicion of criminal activity justifying the extent of appellant's detention.
 {¶ 11} We first note that there are two types of traffic stops, each requiring a different constitutional standard. State v. Moeller (Oct. 23, 2000), Butler App. No. CA99-07-128, at 4. The first is an investigative or "Terry" stop, which occurs where an officer has a reasonable suspicion based upon specific and articulable facts that an individual is or has been engaged in criminal activity. Terry v. Ohio
(1968), 392 U.S. 1, 21. This may support the stopping of a vehicle even where an officer did not necessarily observe a traffic violation.Moeller.
 {¶ 12} The second type of traffic stop, a typical noninvestigatory stop, occurs where an officer directly observes a traffic violation, giving rise to probable cause to stop the vehicle. Whren v. UnitedStates (1996), 517 U.S. 806, 810; Pennsylvania v. Mimms (1977),434 U.S. 106, 109. Here, Trooper Smart's initial noninvestigatory stop of appellant's vehicle was supported by probable cause that appellant committed traffic violations because Smart observed appellant perform multiple improper lane changes and follow another vehicle too closely. The initial stop was therefore justified.
 {¶ 13} If during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may detain the vehicle and driver for as long as the new articulable and reasonable suspicion continues. State v. Myers (1990),63 Ohio App.3d 765, 771. Although Smart initially stopped appellant due to minor traffic violations, during the stop other facts arose justifying the continued detention. Smart noted that both appellant and his passenger remained nervous throughout the stop. Upon investigation, the details of the rental agreement, appellant's dubious answers regarding his travel plans and abrupt exit from the interstate, and various inconsistent explanations provided by him and his passenger led Smart to conclude that appellant was lying about the objectives of his trip. Smart believed that there were drugs in the van after considering appellant's implausible answers in conjunction with the unusual surrounding circumstances. We find that this evidence supports the trial court's conclusion that there were specific and articulable facts giving rise to a reasonable suspicion of criminal activity beyond the reason for the initial stop.
 {¶ 14} The period of detention between the arrival of the first and second drug dogs was also justified. See State v. Myers (1990),63 Ohio App.3d 765. The first dog arrived 16 minutes into the stop; the second 63 minutes into the stop. In the interim, Trooper Smart continued his investigation by questioning appellant and his passenger and persisted in piecing together the details of this unusual situation to ascertain whether or not appellant was engaged in criminal activity. Smart knew that the first dog failed to alert earlier that day, and his call for the second dog did not unduly extend the detention. The trooper weighed his options and, based on his experience, determined that calling a second dog was the least intrusive and time consuming option available. Once the second dog alerted to the van, Smart had probable cause to conduct a warrantless search of the van. State v. Waldroup
(1995), 100 Ohio App.3d 508, 514. We find that the circumstances surrounding this stop were sufficient to prompt a reasonable suspicion of criminal activity to allow Smart to detain appellant and conduct a more in-depth investigation. Because the continued detention was legal and the search justified, exclusion of the cocaine evidence is not warranted.
 {¶ 15} Due to the fact that the detention in this case was lawful, we need not determine the applicability or nonapplicability of the inevitable discovery doctrine, State v. Perkins (1985), 18 Ohio St.3d 193, nor the fruit of the poisonous tree doctrine. Wong Sun v. U.S. (1963),371 U.S. 471, 83 S.Ct. 407. Because appellant failed to show that the trial court erred in denying his motion to suppress, the first assignment of error is overruled.
 {¶ 16} Assignment of Error No. 2:
 {¶ 17} "THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY APPOINTED ATTORNEY FEES AS PART OF HIS CRIMINAL SENTENCE."
 {¶ 18} In his second assignment of error, appellant argues that R.C.2941.51 does not authorize the assessment of court-appointed attorney fees as part of a criminal defendant's sentence, and instead insists that the trial court must enter a separate civil judgment for the fees. The state counters by arguing that R.C. 2941.51 allows a court to assess court-appointed attorney fees to a defendant and that the trial court treated the attorney fees separately from the fine and costs as required by the statute.
 {¶ 19} R.C. 2941.51 governs the payment of appointed counsel and states in pertinent part: "[I]f the person represented has, or reasonably may be expected to have, the means to meet some part of the cost of the services rendered to the person, the person shall pay the county an amount that the person reasonably can be expected to pay." R.C. 2941.51(D).
 {¶ 20} In support of his argument for a separate civil judgment ordering payment of court-appointed attorney fees, appellant cites two Eighth District cases imposing this requirement. See State v. Crenshaw
(2001), 145 Ohio App.3d 86, 90; State v. Trembly (2000),137 Ohio App.3d 134, 144. The Eighth and Third Districts require that a court first make an affirmative determination on the record that defendant is able to pay the attorney fees, and then enter a separate civil judgment for the fees. Crenshaw; Galion v. Martin (Dec. 12, 1991), Crawford App. No. 3-91-6, 1991 WL 261835 at 5. The Sixth and Ninth Districts have also condoned this practice. See State v. Cole, Lucas App. Nos. L-03-1163, L-03-1162, 2005-Ohio-408, ¶ 28; State v. Walker
(Sept. 21, 2001), Lorain App. No. 96CA006534, 2001 WL 1155698 at 3.
 {¶ 21} We have not adopted this two-step process. Interpreting 2941.51(D), we have held that the trial court must only make an affirmative determination on the record that the accused has the ability to pay or may reasonably be expected to have the ability to pay. SeeState v. Dunaway, Butler App. No. CA2001-12-280, 2003-Ohio-1062, ¶ 39;State v. Cooper, 147 Ohio App.3d 116, 2002-Ohio-617, ¶ 71; State v.Rivera-Carillo, Butler App. No. CA20010-3-054, 2002-Ohio-1013, ¶ 135. We have not, however, required entry of a separate civil judgment for the fees. At the close of appellant's sentencing hearing in this case, the trial court properly assessed court-appointed attorney fees to appellant after it made an affirmative determination on the record that appellant had the ability to pay because he was currently employed, able-bodied, and able to work. The trial court noted that it was willing to wait until appellant's release from custody for repayment of the fees. Furthermore, appellant made no objection at the sentencing hearing regarding his ability to pay the fees. State v. Young, Warren App. No. CA2005-03-023, 2005-Ohio-5766, ¶ 12. Because appellant failed to show that the trial court erred in ordering him to pay appointed attorney fees as part of his criminal sentence, the second assignment of error is overruled.
 {¶ 22} In conclusion, the trial court did not err in denying appellant's motion to suppress because the detention was lawful and as such does not warrant exclusion of the evidence as fruit of the poisonous tree. Further, the trial court did not err in ordering appellant to pay his court-appointed attorney fees because the court made an affirmative determination on the record of appellant's ability to pay.
 {¶ 23} Judgment affirmed.
Powell, P.J., and Bressler, J., concur.