The STATE of Ohio, Appellee,

v.

KELLY, Appellant.

[Cite as *State v. Kelly*, 188 Ohio App.3d 842, 2010-Ohio-3560.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2009–10–252.

Decided Aug. 2, 2010.

844

Robin N. Piper III, Butler County Prosecuting Attorney, and Gloria J. Sigman, for appellee.

Scott N. Blauvelt, for appellant.

YOUNG, Presiding Judge.

{¶ 1} Defendant-appellant, Otis Kelly, appeals his conviction in the Butler County Court of Common Pleas for one count of possession of cocaine and the accompanying specification and forfeitures. We affirm the decision of the trial court.

{¶ 2} Detective Mike Hackney of the Butler County Sheriff's Office, Drug and Vice Investigations Unit, received information from several confidential informants that Sudinia Johnson had recently sold several kilos of cocaine and that he had arranged to pick up between seven and ten additional kilos for sale and distribution. Hackney and two other drug-enforcement agents performed a trash pull at Johnson's home address, and also placed a global-positioning system ("GPS") on Johnson's van. As a result of the trash pull, Hackney found multiple receipts for gas purchases within the same day from stations in the Chicago area and Cincinnati.

{¶ 3} Hackney continually tracked the GPS, and on the Tuesday following the trash pull, the GPS indicated that Johnson was located at a shopping center near Chicago. Hackney made several attempts to contact Chicago law enforcement to verify Johnson's location. A worker from the Butler County Sheriff's Office indicated that his brother, Rudy Medellin, lived in the Chicago area and was familiar with the shopping center at which Johnson was located. Hackney contacted Medellin, a retired immigration and customs enforcement officer, and asked him to confirm that Johnson's van was in fact located at the shopping center in Chicago.

{¶ 4} Medellin located Johnson's van at the exact location indicated on the GPS tracker and began relaying information to Hackney regarding two men inside the vehicle. Medellin continued his surveillance, and eventually followed the van to a

residence. Medellin saw the two men exit the van and enter the home and later saw one man exit the house carrying a box. The man, later identified as Johnson, got into the van and drove away. At the same time, the other man, later identified as Kelly, pulled out of the garage in a Ford Taurus that had Ohio plates. Medellin continued to follow Johnson's van and the Ford until the vehicles reached the Butler County area.

{¶ 5} As Medellin followed the vehicles, Hackney communicated with law-enforcement officials along the route to coordinate efforts to make traffic stops on both vehicles. At some point, the two vehicles separated, and Medellin continued to follow Kelly, while the GPS continued to track Johnson's van. Johnson was eventually pulled over, and police began to focus on Kelly. Hackney directed the officers to look for cause to perform a traffic stop on the Ford.

{¶ 6} Deputy Eric Betz with the Butler County Sheriff's Office was patrolling with his partner Deputy Milton Carpenter when they received a call from Hackney instructing them to watch for the Ford. Soon after Hackney's call, Betz and Carpenter spotted a Ford matching the description given by Hackney and began following it. Within a short distance, Betz, the passenger in the police cruiser, observed Kelly following too closely to the SUV driving in front of the Ford. Betz and Carpenter then initiated a traffic stop.

{¶ 7} Carpenter approached the Ford on the driver's side, as Betz approached the passenger's side door. The deputies asked Kelly for his license and had him exit the car. According to Betz's testimony at the hearing on the motion to suppress, before Kelly exited the car, he appeared very nervous and was "moving around in the vehicle." When the deputies asked Kelly where he was coming from, he responded that he had been at his mother's apartment complex. The deputies then placed Kelly in the back of their police cruiser.

{¶ 8} Approximately 30 seconds after the traffic stop, a state trooper and a Hamilton County canine unit arrived on the scene and walked drug-detecting dogs around the Ford. The state trooper's dog indicated the presence of drugs at the rear bumper area of the car, and the Hamilton County dog indicated at the same position. Upon searching the trunk area, Hackney found a hidden compartment that contained seven kilos of cocaine.

{¶ 9} Kelly was indicted for one count of trafficking in cocaine with a major-drug-offender specification and three forfeiture specifications, and one count of possession of cocaine with the same four specifications. Kelly filed a motion to suppress, claiming that the traffic stop was unlawful, that the stop was unreasonably long, and that the warrantless search of the trunk was a constitutional violation. After a hearing, the trial court denied Kelly's motion.

{¶ 10} On the day trial was to begin, Kelly pleaded no contest to the charges and four accompanying specifications. The trial court found Kelly guilty, and the counts were merged for sentencing purposes into a single count of cocaine possession. The trial court sentenced Kelly to a mandatory ten-year prison sentence with a consecutive one-year term for the major-drug-offender specification. The trial court also imposed a $10,000 fine and ordered forfeiture of Kelly's three vehicles. Kelly now appeals the decision of the trial court, raising the following assignment of error.

{¶ 11} "The trial court erred to the prejudice of appellant in denying his motion to suppress evidence."

{¶ 12} In his assignment of error, Kelly argues that the trial court improperly denied his motion to suppress. This argument lacks merit.

{¶ 13} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran,* Preble App. No. CA2006–10–023, 2007-Ohio-3353, 2007 WL 1880207. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. Id. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* Butler App. No. CA2005–03–074, 2005-Ohio-6038, 2005 WL 3031883. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

## A. Traffic Stop

{¶ 14} Kelly first claims that the police lacked probable cause or a reasonable articulable suspicion that he had committed a traffic violation when they stopped him. Instead, Kelly asserts that the officers pulled him over on purely pretextual grounds, therefore violating his constitutional rights.

{¶ 15} The Fourth Amendment to the United States Constitution protects persons from unreasonable governmental searches and seizures. *United States v. Hensley* (1985), 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604. Regarding the legality of an traffic stop, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus. An officer's direct observation that a vehicle is following another vehicle too closely

provides probable cause to initiate a lawful traffic stop. *State v. Perry,* Preble App. No. CA2004–11–016, 2005-Ohio-6041, 2005 WL 3031741, ¶ 12.

{¶ 16} According to R.C. 4511.34, "the operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway."

{¶ 17} Deputies Betz and Carpenter observed Kelly following the SUV in front of him too closely, and they therefore had probable cause to initiate a traffic stop under R.C. 4511.34. At the hearing on the motion to suppress, Betz testified that when he and his partner began following Kelly, he noticed that Kelly's car was traveling "just a few feet" behind the SUV. As the passenger in the police cruiser, Betz was able to focus on Kelly's vehicle and observed Kelly driving between 30 and 35 m.p.h. State Trooper Shawn Simms also testified that he was following Betz's police cruiser and from his vantage point, he could see Kelly's car following too closely to the SUV. Although Simms was behind the police cruiser, he testified that he could see the position of Kelly's car clearly because they were traveling down a hill and there was a slight curve in the road so that he could see the traffic in front of him. According to Simms's estimate, Kelly's car was traveling less than a car length behind the SUV.

{¶ 18} Kelly now argues that Betz and Simms's testimony should be discredited because they did not state in their testimony what constitutes a reasonable and prudent distance under R.C. 4511.34. However, several Ohio courts and federal courts applying Ohio law have held that police may use a general rule of one car length for every 10 m.p.h. the car is traveling as an indicator that a driver has violated the statute. See *State v. Meza,* Lucas App. No. L–03–1223, 2005-Ohio-1221, 2005 WL 635028, ¶ 19; and *United States v. Dukes* (C.A.6, 2007), 257 Fed.Appx. 855, 858.

{¶ 19} According to Betz's estimation, Kelly was traveling between 30 and 35 m.p.h. At that speed, and according to the general rule, Kelly should have maintained a three-car distance between himself and the SUV in front of him. However, Betz testified that Kelly was traveling only a few feet behind the SUV, and Simms testified that Kelly was less than one car length behind the SUV. Even absent direct testimony regarding what Betz and Simms considered a reasonable and prudent distance under the statute, Kelly's following distance was a clear violation of the general rule specific to R.C. 4511.34.

{¶ 20} Based on Betz and Simms's testimony, the trial court properly concluded that the traffic stop was lawfully initiated after the officers observed Kelly following too closely. In light of the probable cause created by the traffic

violation, the fact that law enforcement may have been looking for a reason to stop Kelly's vehicle is irrelevant.

### B. Placement in Police Cruiser

{¶ 21} Kelly next asserts that his motion to suppress should have been granted because he was arrested without probable cause when Deputies Betz and Carpenter placed him in their police cruiser after initiating the traffic stop.

{¶ 22} This court has consistently held that an officer does not effectuate an arrest by merely placing a person in the back of a police cruiser. "Having an individual sit in a police cruiser for a short time to answer a few questions does not necessarily elevate the situation to something greater than an ordinary traffic stop. This is true whether the individual is being requested to stay while an accident report is completed or relevant facts are ascertained. An individual may also be temporarily restrained either for his own safety or that of the officer." *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, 2000 WL 525671, ¶ 8–9. "Confining an individual to the police cruiser is not a custodial placement if it is part of the investigation, even if the suspect in the police cruiser is not free to leave." *In re M.D.*, Madison App. No. CA2003–12–038, 2004-Ohio-5904, 2004 WL 2505161, ¶ 18.

{¶ 23} Kelly was placed in the police cruiser not as an arrest but according to the officers' need to ascertain relevant facts in the investigation. After Kelly exited the car, the deputies placed him, without handcuffs, in the back of their cruiser and then continued to gather facts. While Kelly was in the cruiser, the other officers and canine units were on the scene performing their normal fact-finding and investigatory duties. See *State v. Bartone*, Montgomery App. No. 22920, 2009-Ohio-153, 2009 WL 104885, ¶ 22 (finding that appellant was not arrested where he was placed in a police cruiser "while the drug-sniffing dog was present"). Given these circumstances, Betz and his partner were justified in placing Kelly in the back of the cruiser as law enforcement continued to gather facts, and that placement did not constitute an arrest that required probable cause.

### C. Length of Stop

{¶ 24} Kelly also challenges the duration of the traffic stop specific to the deputies' failure to use the time to issue a traffic citation for following too closely or perform any license or background checks typically associated with investigation of a suspected traffic violation.

{¶ 25} "In conducting a stop of a motor vehicle for a traffic violation, an 'officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped.'

*State v. Cahill*, Shelby App. No. 17–01–19, 2002-Ohio-4459[, 2002 WL 1990406], ¶ 21. However, an investigative stop may last no longer than is necessary to effectuate the purpose of the stop. Thus, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. This time period also includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates." (Citations omitted.) *State v. Howard*, Preble App. Nos. CA2006–02–002 and CA2006–02–003, 2006-Ohio-5656, 2006 WL 3059799, ¶ 14–15. Furthermore, a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop, and an alert by a trained narcotics dog provides law enforcement with probable cause to search the vehicle for contraband. *Howard* at ¶ 17.

{¶ 26} Deputy Betz testified that in his experience, he usually takes approximately 10 to 15 minutes to conduct a traffic stop, check registration, and issue a ticket. The record indicates that the canine units were on the scene of the stop within 30 seconds and that the actual dog sniff was performed within minutes. Trooper Shawn Simms also testified that his canine alerted to drug presence less than five minutes after the stop was initiated.

{¶ 27} The record is therefore clear that the canine sniff occurred well within the 10 to 15 minutes Betz normally takes to perform a traffic stop and within the time period necessary to effectuate the original purpose of the stop. The fact that the deputies neither contacted the dispatcher to verify Kelly's license and registration information nor issued a traffic citation for Kelly's violation of R.C. 4511.34 is irrelevant when they had probable cause to initiate the lawful traffic stop. See *State v. Keathley* (1988), 55 Ohio App.3d 130, 562 N.E.2d 932 (affirming trial court's denial of appellant's motion to suppress when officer had probable cause for initiating a traffic stop and issued a citation for driving under suspension rather than a citation for the traffic offense for which appellant was originally stopped).

{¶ 28} Having found that the deputies had probable cause to stop Kelly's vehicle for following too closely, that Kelly was not under arrest during the time he sat in the police cruiser, and that the stop's duration was proper, the trial court did not err in denying the motion to suppress. Kelly's assignment of error is overruled.

Judgment affirmed.

Bressler and Powell, JJ., concur.