[Cite as *State v. Quaker*, 2020-Ohio-2887.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO.  1-19-33

    v.

BLAKE A. QUAKER,                     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2018 0138

Judgment Affirmed

Date of Decision:  May 11, 2020

APPEARANCES:

    *Linda Gabriele* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Blake A. Quaker ("Quaker"), appeals the May 10, 2019 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case arises from a March 29, 2018 traffic stop of Quaker's vehicle on Interstate 75 in Allen County, Ohio. When approaching Quaker's vehicle, Trooper Bryan Holden ("Trooper Holden"), the law enforcement officer who stopped the vehicle, detected the odor of burnt marijuana emanating from within the vehicle. Thereafter, Trooper Holden asked Quaker to exit the vehicle and secured him in the backseat of his patrol vehicle. When Trooper Holden opened the passenger side door of the vehicle, he observed an open dominoes container containing what Trooper Holden recognized as raw marijuana residue. Law enforcement officers conducted a search of the passenger compartment and trunk of the vehicle. During the search of the trunk, law enforcement officers located a black backpack. Inside the backpack, law enforcement officers discovered a clear vacuum-sealed bag wrapped in a t-shirt and duct tape containing what law enforcement officers suspected to be opioids. The package was seized, and its contents were later identified as fentanyl.

{¶3} On May 17, 2018, the Allen County Grand Jury indicted Quaker on one count of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c),

a second-degree felony. (Doc. No. 4). On May 25, 2018, Quaker appeared for arraignment and pleaded not guilty to the charge in the indictment. (Doc. No. 11).

{¶4} On August 21, 2018, Quaker filed a motion to suppress evidence. (Doc. No. 27). In his motion, Quaker argued that the law enforcement officers exceeded their authority by searching the trunk of the vehicle.[1] (*Id.*). A hearing on Quaker's suppression motion was conducted on October 2, 2018. (Doc. No. 39). On October 5, 2018, the trial court denied Quaker's motion to suppress evidence. (*Id.*).

{¶5} On January 28, 2019, Quaker filed a "Motion for Leave to File Delayed Motion to Suppress Stop Instanter."[2] (Doc. No. 72). On February 5, 2019, the trial court granted Quaker's motion to file the delayed suppression motion. (Doc. No. 75). The following day, Quaker filed additional authority regarding the motion to suppress the stop. (Doc. No. 77). On February 11, 2019, the State filed its response to Quaker's motion to suppress the traffic stop. (Doc. No. 79). A hearing on Quaker's second suppression motion was held on February 14, 2019. (Doc. No. 86). On February 15, 2019, Quaker filed supplemental briefing in reply to the

---

[1] In the August 21, 2018 motion to suppress, Quaker also challenges the validity of the initial stop of his vehicle by law enforcement. (*See* Doc. No. 27). However, at the hearing on October 2, 2018, Quaker's trial counsel conceded that Quaker was not challenging the initial stop of the vehicle. (Oct. 2, 2018 Tr. at 49-50). (*See* Doc. No. 39).

[2] On January 28, 2019, Quaker also filed a "Motion for Leave to Filed Delayed Motion to Suppress Statement Instanter," in which he argued that certain statements he made during the encounter should be suppressed because the *Miranda* warnings he received were incomplete. (Doc. No. 73). On February 5, 2019, the trial court granted Quaker's motion to file the delayed motion to suppress statements. (Doc. No. 75). On February 14, 2019, the trial court heard both suppression motions filed on January 28, 2019. (Doc. No. 86). On March 8, 2019, the trial court granted Quaker's motion to suppress statements, in part. (*Id.*). Because Quaker does not challenge the issues raised in his January 28, 2019 motion to suppress the statements, we will not further address this motion.

State's response. (Doc. No. 82). On March 8, 2019, the trial court denied Quaker's motion to suppress the stop of the vehicle. (Doc. No. 86).

{¶6} On March 28, 2019, Quaker, under a negotiated plea agreement, withdrew his not guilty plea and entered a plea of no contest to the count in the indictment. (Doc. Nos. 89, 90). In exchange, the State agreed to make no sentencing recommendation. (Doc. No. 89). The trial court accepted Quaker's no contest plea, found him guilty, and ordered a presentence investigation. (Doc. No. 90). On May 10, 2019, the trial court sentenced Quaker to four years' imprisonment. (Doc. No. 94).

{¶7} On June 4, 2019, Quaker filed a notice of appeal. (Doc. No. 99). He raises three assignments of error for our review, which we will address together.

### Assignment of Error No. I

**The trial court erred in overruling the defendant-appellant's motion to suppress as law enforcement lacked reasonable suspicion to stop the defendant-appellant.**

### Assignment of Error No. II

**The trial court erred in overruling the defendant-appellant's motion to suppress as law enforcement lacked probable cause to conduct a warrantless search of the defendant-appellant's vehicle.**

### Assignment of Error No. III

**The trial court erred in overruling the defendant-appellant's motion to suppress as law enforcement lacked probable cause to arrest the defendant-appellant.**

{¶8} In his first assignment of error, Quaker argues the trial court erred by denying his motion to suppress the stop of the vehicle because Trooper Holden did not have reasonable and articulable suspicion that he was operating the motor vehicle in violation of the law. (Appellant's Brief at 12). Specifically, Quaker argues that because Trooper Holden did not have probable cause to stop the vehicle for a violation of R.C. 4511.34, which is commonly referred to as "following too close," the trial court erred by concluding that the stop of his vehicle was constitutionally valid. (*Id.* at 12-15). In his second assignment of error, Quaker argues that the trial court erred by denying his motion to suppress because law enforcement lacked probable cause to conduct a warrantless search of his vehicle. (*Id.* at 15). Specifically, Quaker contends that law enforcement did not have probable cause to search the trunk of the vehicle because law enforcement did not detect the odor of raw marijuana in the passenger compartment of the vehicle. (*Id.* at 15-18). In his third assignment of error, Quaker argues that the trial court erred in overruling his motion to suppress because law enforcement did not have probable cause to arrest him. (*Id.* at 18-19).

{¶9} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." "'The primary purpose of the Fourth Amendment is to impose a standard of reasonableness upon the exercise of

discretion by law enforcement officers in order to "safeguard the privacy and security of individuals against arbitrary [governmental] invasions."'" *State v. Kerr*, 3d Dist. Allen No. 1-17-01, 2017-Ohio-8516, ¶ 12, quoting *State v. Carlson*, 102 Ohio App.3d 585, 592 (9th Dist.1995), quoting *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391 (1979). "'The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable.'" *Id.*, quoting *Florida v. Jimeno*, 500 U.S. 248, 250, 111 S.Ct. 1801 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793 (1990). "Thus, '[t]he touchstone of the Fourth Amendment is reasonableness.'" *Id.*, quoting *Jimeno* at 250.

{¶10} "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Wren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769 (1996), citing *Prouse* at 653, 99 S.Ct. 1391, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556, 96 S.Ct. 3074 (1976), and *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574 (1975). Accordingly, "[a]n automobile stop is * * * subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Id.* at 810. An automobile stop based on probable cause that a criminal violation, including a minor traffic violation, has occurred or was occurring "is not unreasonable, and * * * an officer who makes a traffic stop based on probable cause acts in an objectively

reasonable manner." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). In this context, "[p]robable cause, 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, ¶ 18, quoting *State v. George*, 45 Ohio St.3d 325, 329 (1989).

{¶11} Concerning the stop of Quaker's vehicle, the trial court found, in relevant part, as follows:

At the hearing, [Trooper] Holden testified that he was in his patrol car in a stationary position in the median of I-75 when the defendant passed him in the far right southbound lane. The defendant at that time was approximately 1 ½ to 2 car lengths behind another vehicle. The road conditions were wet, as it was raining outside. The initial sighting of the defendant by the trooper is not visible on State's Exhibit 1 as the recording begins 90 seconds before the trooper turned on his lights to actually initiate the traffic stop. However, the video does reveal the wet road condition, the fact it was raining, and the defendant behind another vehicle at a fairly short distance. The trooper also testified that he was able to pace the defendant's speed at 65-68 mph, that the posted speed limit in that area is 70 mph, and that

he has been trained that a vehicle should keep one car length of distance from another vehicle for every 10 miles of speed in ideal conditions in order to ensure adequate space and time to stop if necessary.

(Doc. No. 86).

{¶12} We conclude that competent, credible evidence supports the trial court's findings with respect to the circumstances surrounding the stop of Quaker's vehicle. At the February 14, 2019 suppression hearing, Trooper Holden, a canine handler and interdiction officer with the Ohio State Highway Patrol, testified that on March 29, 2018, he was in his patrol vehicle sitting stationary in the median crossover of Interstate 75 in Allen County, Ohio patrolling the two lanes of southbound traffic when he observed two vehicles in the right-hand lane approach his location. (Feb. 14, 2019 Tr. at 6-9). Trooper Holden testified that the vehicles attracted his attention because the small passenger car was closely trailing the SUV despite the fact that the left lane of traffic was "wide open" and clear of traffic. (*Id.* at 9). Trooper Holden testified that when the small passenger vehicle passed his location, the vehicle was trailing the SUV at a distance of approximately one and one-half to two car lengths. (*Id.*).

{¶13} Trooper Holden testified that shortly after the vehicles passed his location, he began to pursue the small passenger vehicle. (*Id.* at 9-10). Trooper

Holden stated that by the time he caught up to the small passenger vehicle, it had increased the distance between it and the SUV in front of it to a distance of approximately two to two and one-half car lengths. (*Id.* at 10). Trooper Holden testified that the speed limit of the area is 70 miles per hour, and that although he did not initially check the speed of the small passenger vehicle, he subsequently paced the passenger vehicle and determined that it was traveling at a speed of approximately 65 to 68 miles per hour. (*Id.* at 12). Trooper Holden testified that at the time of his observations, it was raining, and he described the roads as "fairly wet." (*Id.* at 7-8). Trooper Holden stated that he initiated a traffic stop of the small passenger vehicle for following the SUV too closely. (*Id.* at 10). He identified Quaker as the driver and sole occupant of the small passenger vehicle. (*Id.* at 8-9).

{¶14} Trooper Holden described a general guideline he uses to assist in determining whether a vehicle is traveling too close to the vehicle in front of it. (*Id.* at 16-18). According to Trooper Holden, under this guideline, for every ten miles per hour that a vehicle is traveling, a vehicle should give itself one car length of space between it and the vehicle in front of it. (*Id.* at 18). Trooper Holden stated that the guideline is "based on pretty ideal conditions," including a dry roadway. (*Id.* at 19). According to Trooper Holden, rain increases stopping distance and can increase reaction time. (*Id.*).

**{¶15}** Trooper Holden testified that his patrol vehicle is equipped with a camera that was in working order on the day of the incident and identified State's Exhibit 1 as his patrol vehicle footage of the incident. (*Id.* at 13). (*See* State's Ex. 1). Trooper Holden stated that the computer system saves and uploads the video footage starting ninety seconds before he activates his overhead lights. (Feb. 14, 2019 Tr. at 13-14). He further testified that State's Exhibit 1 did not include his initial observation of the two vehicles because it occurred more than 90 seconds before he activated his overhead lights to initiate the stop of Quaker's vehicle. (*Id.* at 14). (*See* State's Ex. 1).

**{¶16}** State's Exhibit 1 begins as Trooper Holden's vehicle is traveling southbound on Interstate 75. (State's Ex. 1). In the dashboard footage, two vehicles are depicted traveling in the right lane of travel. (*Id.*). In the video recording, a small gray vehicle is seen closely following a dark-colored SUV. (*Id.*). As the recording continues, the small gray vehicle increases the distance between the vehicle and the dark-colored SUV it is trailing. (*Id.*). In addition, the recording reflects that in the time preceding the stop of the vehicle, it was raining and the windshield wipers of Trooper Holden's patrol vehicle were activated. (*Id.*).

**{¶17}** Therefore, competent, credible evidence supports the trial court's factual findings concerning Trooper Holden's stop of Quaker's vehicle. *See State v. Craw*, 3d Dist. Mercer No. 10-17-09, 2018-Ohio-1769, ¶ 36, citing *State v.*

*Thompson*, 7th Dist. Jefferson Nos. 98 JE 28 and 98 JE 29, 2001 WL 69197, *5-6 (Jan. 24, 2001). Based on these findings, the trial court concluded that the stop of Quaker's vehicle was constitutionally permissible because Trooper Holden provided "specific and articulable facts" to warrant the stop of Quaker's vehicle for a violation of R.C. 4511.34 and had probable cause to believe that Quaker committed a traffic violation. (Doc. No. 86).

{¶18} We conclude that the trial court did not err by holding that Trooper Holden had probable cause to stop Quaker's vehicle for a violation of R.C. 4511.34. Since the required reasonable articulable suspicion standard is a lower standard than that of probable cause, it is clear that Trooper Holden had a basis for initiating a traffic stop of Quaker's vehicle. *See State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539 ¶ 23.

{¶19} R.C. 4511.34 provides in pertinent part:

The operator of a motor vehicle, streetcar, or trackless trolley shall not follow another vehicle, streetcar, or trackless trolley more closely than is reasonable and prudent, having due regard for the speed of such vehicle, streetcar, or trackless trolley, and the traffic upon and the condition of the highway.

R.C. 4511.34(A). "Although R.C. 4511.34(A) does not provide a specific standard for determining when a motorist is following another vehicle more closely than is

reasonable and prudent, numerous courts have concluded that a motorist's failure to follow another vehicle at a distance greater than one car length for every ten miles per hour the motorist's vehicle is traveling may, in some circumstances, indicate that the motorist is in violation of R.C. 4511.34." *State v. Holmes*, 3d Dist. Allen No. 1-18-52, 2019-Ohio-2485, ¶ 29, citing *State v. Ward*, 4th Dist. Washington No. 10CA30, 2011-Ohio-1261, ¶ 16-17, *State v. Kelly*, 188 Ohio App.3d 842, 2010-Ohio-3560, ¶ 18-20 (12th Dist.), *State v. Stokes*, 10th Dist. Franklin No. 07AP-960, 2008-Ohio-5222, ¶ 24-25, *State v. Meza*, 6th Dist. Lucas No. L-03-1223, 2005-Ohio-1221, ¶ 19, and *United States v. Dukes*, 257 Fed.Appx. 855, 858 (6th Cir.2007). "However, regardless of this 'car-length' standard, '[a]s is clear, the statute is couched in relative terms, and violations depend upon the circumstances of a given case.'" *Id.*, quoting *State v. Mason-Cowan*, 10th Dist. Franklin No. 11AP-261, 2012-Ohio-1074, ¶ 7, citing *State v. Gonzalez*, 43 Ohio App.3d 59, 62 (6th Dist.1987). "'An officer's direct observation that a vehicle is following another vehicle too closely provides probable cause to initiate a lawful traffic stop.'" *Id.*, quoting *Kelly* at ¶ 15, citing *State v. Perry*, 12th Dist. Preble No. CA2004-11-016, 2005-Ohio-6041, ¶ 12.

{¶20} Here, the record supports the trial court's findings that Trooper Holden observed Quaker's vehicle following the SUV vehicle at a distance of one and one-half to two car lengths and that Quaker's vehicle was traveling in excess of 65 miles

per hour as it trailed the SUV. Given that Trooper Holden observed Quaker's vehicle following another vehicle at a close distance and at a high speed while it was raining, Trooper Holden had enough information to determine that, when considering the speed of Quaker's vehicle and the condition of the highway, there was a sufficiently high probability that Quaker was not following the vehicle at a reasonable and prudent distance. Thus, because the stop of Quaker's vehicle was supported by probable cause, the trial court did not err by concluding that the stop was constitutionally valid. *See Holmes* at ¶ 30 (holding that a law enforcement officer had probable cause to initiate a traffic stop of the defendant's vehicle for a violation of R.C. 4511.34 where the vehicle maintained less than two car lengths' distance behind a commercial vehicle during rainy weather conditions).

{¶21} Nevertheless, Quaker argues that the trial court erred because Trooper Holden's testimony is inconsistent with State's Exhibit 1. Specifically, Quaker argues that State's Exhibit 1 depicts the two relevant vehicles as they pass under an overpass, and that based upon the time that elapsed between the two vehicles reaching the overpass, his vehicle had to be traveling more than one and one-half to two car lengths behind the SUV it was trailing. We disagree.

{¶22} Trooper Holden testified that while sitting stationary in the median, he initially observed Quaker traveling one and one-half to two car lengths behind an SUV. Trooper Holden stated that he then pulled onto the highway and followed

Quaker for some time before initiating the stop. Moreover, Trooper Holden testified that the footage depicted in State's Exhibit 1 began 90 seconds before he activated his lights and initiated the stop of Quaker's vehicle. He further clarified that the initial violation was not depicted in State's Exhibit 1 because it occurred more than 90 seconds prior to the time he activated his lights. Trooper Holden also testified that Quaker eventually slowed down and increased the distance between his vehicle and the vehicle in front of him. Thus, we do not find that Trooper Holden's testimony is inconsistent with State's Exhibit 1.

{¶23} Quaker also argues that Trooper Holden's stop of Quaker's vehicle was improper because "most vehicles passing by the scene of the traffic stop and on the other side of the highway maintained the same distance between vehicles, and usually much less, than the clearance of [Quaker's] vehicle." (Appellant's Brief at 14). We disagree. First, as detailed above, Trooper Holden testified that the initial violation was not depicted in State's Exhibit 1. Thus, we cannot compare the distances maintained by traffic observed in State's Exhibit 1 to Trooper Holden's initial observation of Quaker's vehicle. Moreover, even if other vehicles depicted in State's Exhibit 1 were following too closely, that does not mean that Quaker was not following too close or that probable cause did not exist to initiate a traffic stop of Quaker's vehicle.

{¶24} Having concluded that the trial court did not err by holding that probable cause supported the stop of Quaker's vehicle, we next determine whether the trial court erred by holding that the warrantless search of Quaker's vehicle was constitutional.

{¶25} Concerning the search of Quaker's vehicle, the trial court found, in relevant part, as follows:

As the passenger car passed his location he noticed that the driver concealed his head and face behind the pillar of the vehicle between the front and back seat and never looked over at the officer. He also noticed that the left lane was free of traffic as the Defendant's vehicle was following closely as set forth.

Upon approaching what was found to be the Defendant's vehicle and upon entering into a discussion with the driver he could smell the odor of burnt marijuana coming from the subject vehicle. Information was provided by the driver with respect to who had rented the agreement [sic] and the Trooper became aware of the fact that the rental agreement was expired and that the driver was not the renter.

The Trooper asked Defendant to exit the vehicle and undertook a pat down of defendant for his own safety. The Trooper noticed two

comparatively large hard objects on the Defendant which turned out to be wads of cash in smaller bills.

Inside the vehicle was a [dominoes] box that can clearly be seen in the Exhibits numbered 2 and 3. The [dominoes] box was stuffed near the bottom of the seat described at the base of the seat near a hard portion of the same. The Trooper saw raw marijuana residue inside the [dominoes] box. The Trooper advised the driver, Defendant herein, that he could smell the odor of burnt marijuana coming from inside the vehicle and that he would be [conducting] a probable cause search of the vehicle. A second Trooper, Trooper Stewart, arrived at the scene to assist in the probable cause of the search of the vehicle. The search of the trunk of the vehicle indicated that there was a backpack inside the trunk. The backpack contained t-shirts and a hard object which upon the Trooper's procurement appeared to be a drug related substance based upon the way it was packaged and from its appearance. The Defendant was put under arrest.

(Doc. No. 39).

{¶26} We conclude that competent, credible evidence supports the trial court's findings with respect to the circumstances surrounding the search of Quaker's vehicle. At the October 2, 2018 suppression hearing, Trooper Holden

testified that after he initiated the stop of Quaker's vehicle, he approached the vehicle from the passenger-side door so that he was not exposed to the highway traffic. (Oct. 2, 2018 Tr. at 9-10). Trooper Holden stated that upon making contact with Quaker he immediately detected the odor of burnt marijuana emanating from the inside passenger compartment. (*Id.* at 10). Upon request for his identification, Quaker provided Trooper Holden his Tennessee driver's license and a rental agreement for the vehicle. (*Id.* at 11). Upon inspection of the rental agreement, Trooper Holden noticed that the rental agreement was expired by one day. (*Id.* at 12). Additionally, Trooper Holden observed that Quaker was not the party named on the rental agreement. (*Id.* at 11). Moreover, no additional drivers were named on the rental agreement. (*Id.* at 12). Trooper Holden stated that Quaker explained to him that the party to the rental agreement was his girlfriend, Marquita Webb ("Webb"). (*Id.*). Trooper Holden testified that in his experience, an expired, third-party rental agreement can be an indicator of criminal activity. (*Id.* at 12-14).

{¶27} Trooper Holden asked Quaker to exit the rental vehicle and sit in the backseat of his patrol vehicle, and he asked Quaker to bring his phone so that they could call Webb regarding whether Quaker had her permission to drive the vehicle. (*Id.* at 15-16). Trooper Holden testified that he then walked Quaker to the front of the patrol vehicle and conducted a pat down. (*Id.* at 16). During the pat down, he felt two "large wads" in Quaker's front pants pockets that he suspected were wads

of currency. (*Id.*). Trooper Holden testified that carrying large amounts of currency can be an indicator of criminal activity. (*Id.*). Trooper Holden did not remove the items from Quaker's pockets at that time. (*Id.*).

{¶28} Once Quaker was seated in Trooper Holden's patrol vehicle, Trooper Holden informed him that he was going to search the vehicle because he could smell burnt marijuana coming from inside the vehicle. (*Id.* at 17). Trooper Holden observed that Quaker's passenger side window was rolled down, despite the fact that it was raining. (*Id.* at 18). Trooper Holden informed Quaker that he was going to roll up Quaker's passenger window, and Quaker indicated that it was permissible for Trooper Holden to do so. (*Id.* at 18-19). Thereafter, Trooper Holden opened the passenger side door of Quaker's car. (*Id.* at 19). Upon opening the door, he immediately observed a dominoes case without a lid on it pushed against the base of the passenger seat and the door. (*Id.* at 19-22). Trooper Holden observed raw marijuana residue on top of the dominoes inside the case. (*Id.* at 22-23). In support of his observation that the dominoes case contained raw marijuana residue or "shake," Trooper Holden testified that through his employment, he has observed raw marijuana residue "too many [times] to count," but "no less than five hundred times." (*Id.* at 23-24, 26). In fact, Trooper Holden keeps raw marijuana residue in his patrol vehicle as a training aid for his canine, so he sees it "quite frequently." (*Id.* at 23).

{¶29} Once additional law enforcement officers arrived on the scene, they conducted a probable cause search of the vehicle on the roadside. (*Id.* at 26). Trooper Holden testified that, aside from the raw marijuana residue in the dominoes case that he previously observed, he did not find additional contraband in the passenger compartment of the vehicle. (*Id.*). While searching the trunk of the vehicle, Trooper Holden located a black backpack. (*Id.*). When Trooper Holden opened the backpack, he observed several brand new white t-shirts. (*Id.* at 27-28). Trooper Holden squeezed the t-shirts and found a "hard object" inside one. (*Id.* at 28). When Trooper Holden looked inside, he discovered a vacuum sealed bag, approximately the size of a baseball, wrapped in duct tape. (*Id.*). Trooper Holden looked inside through the vacuum-sealed packaging, and observed a "chalk grey-like substance" which, through his training and experience, he suspected to be heroin. (*Id.*). The State also presented photos of the black backpack and its contents. (*Id.* at 27-31). (*See* State's Exs. 4-6).

{¶30} After the law enforcement officers located the suspected contraband in the backpack, they placed Quaker under arrest and transported him to their post. (Oct. 2, 2018 Tr. at 31-32). Trooper Holden testified that a preliminary test was performed on the substance at post, which came back with a presumptive positive result for opiates. (*Id.* at 31). The crime lab subsequently conducted more thorough testing on the substance and determined it was fentanyl. (*Id.*).

{¶31} In addition to Trooper Holden's testimony, the State provided Trooper Holden's dashboard footage of the events. (*Id.* at 4). (*See* State's Ex. 1). The dashboard footage is consistent with Trooper Holden's testimony of the events. (*See* State's Ex. 1).

{¶32} Based on these findings, the trial court concluded that law enforcement officers had probable cause to search the passenger compartment and trunk of Quaker's vehicle. (Doc. No. 39). Specifically, the trial court concluded that the odor of burnt marijuana and visual finding of raw marijuana residue in the dominoes case, "coupled with (1) the traffic violation, (2) the furtive motion of the defendant in moving behind the center post, (3) the existence of an expired rental agreement, (4) the wad of currency and (5) the rental agreement being in another name other than the defendant constitute the [sic] sufficient probable cause for a search of the entire vehicle." (*Id.*).

{¶33} We conclude that the trial court did not err by holding that law enforcement had probable cause to conduct a warrantless search of the passenger compartment and trunk of Quaker's vehicle. ""Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement."" *State v. Gartrell*, 3d Dist. Marion No. 9-14-02, 2014-Ohio-5203, ¶ 57, quoting *State v. Minyoung*, 3d Dist. Van Wert No.

15-11-11, 2012-Ohio-411, ¶ 25, quoting *State v. Moore*, 90 Ohio St.3d 47, 51 (2000). "'"[T]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement."'" *Id.*, quoting *State v. Runyon*, 12th Dist. Clermont No. CA2010-05-032, 2011-Ohio-263, ¶ 14, quoting *Moore* at 48. "'"There need be no other tangible evidence to justify a warrantless search of a vehicle."'" *Id.*, quoting *Runyon* at ¶ 14, quoting *Moore* at 48.

{¶34} However, "'[a] trunk and a passenger compartment of an automobile are subject to different standards of probable cause to conduct searches.'" *Id.* at ¶ 58, quoting *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 51. "'The odor of *burnt* marijuana in the passenger compartment of a vehicle does not, standing alone, establish probable cause for a warrantless search of the trunk of the vehicle.'" (Emphasis sic.) *Id.*, quoting *Farris* at ¶ 52, citing *United States v. Nielsen*, 9 F.3d 1487 (10th Cir.1993). "'However, where an officer detects a strong odor of *raw* marijuana, but no large amount is found within the passenger compartment of the vehicle, the officer has probable cause to search the trunk,' including the trunk's contents." (Emphasis sic.) *Id.*, quoting *State v. Price*, 6th Dist. Sandusky No. S-11-037, 2013-Ohio-130, ¶ 16, citing *State v. Gonzales*, 6th Dist. Wood No. WD-07-060, 2009-Ohio-168 and *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157 (1982). "In addition, even the smell of *burnt* marijuana, if coupled with 'other

evidence' of drug activity, such as large amounts of cash, can serve as probable cause justifying a search of an automobile's trunk." (Emphasis sic.) *Id.*, quoting *Price* at ¶ 19 and *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, ¶ 24.

{¶35} Here, Quaker argues that "there was no action by [Quaker] that would have created probable cause to allow the trooper to, without a warrant, search the trunk of the vehicle." (Appellant's Brief at 16). In support of his position, Quaker analogizes this case to *State v. Farris*, in which the Supreme Court of Ohio held that, standing alone, the odor of burnt marijuana in the passenger compartment of a vehicle does not establish probable cause for the warrantless search of the trunk of the vehicle. *Farris* at ¶ 52. However, Quaker's reliance on *Farris* is misplaced.

{¶36} In *Farris*, after initiating a traffic stop of Farris's vehicle for speeding, the law enforcement officer detected "a light odor of burnt marijuana" emanating from inside the vehicle. *Id.* at ¶ 1. Thereafter, law enforcement officers searched the passenger compartment and trunk of Farris's vehicle. *Id.* at ¶ 5. Although the officers found no contraband in the passenger compartment of the vehicle, law enforcement officers found drug paraphernalia in the vehicle's trunk, and Farris was subsequently charged with misdemeanor possession of drug paraphernalia. *Id.* Farris filed a motion to suppress the drug paraphernalia seized from the search on the basis that law enforcement officers did not have probable cause to search the

trunk of the vehicle. *Id.* at ¶ 6. The trial court overruled Farris's motion to suppress and found that law enforcement officers had probable cause to search the trunk of the vehicle based solely on the odor of burnt marijuana coming from the passenger compartment. *Id.* The appellate court upheld the trial court's decision with respect to the search of the vehicle. *Id.* at ¶ 7. However, the Supreme Court of Ohio found that aside from the odor of burnt marijuana in the vehicle, no other factors were present to justify the search of the vehicle. *Id.* at ¶ 52. Accordingly, the Supreme Court of Ohio reversed the appellate court's decision with respect to the motion to suppress the drug paraphernalia. *Id.* at ¶ 52-53.

{¶37} In contrast to the search at issue in *Farris*, although Trooper Holden did detect the odor of burnt marijuana emanating from the passenger compartment of the vehicle, Trooper Holden also observed a number of additional indicators of drug activity which, coupled with the smell of burnt marijuana, did provide law enforcement officers with probable cause to conduct a search of the vehicle's trunk. In addition to the odor of burnt marijuana, Trooper Holden also observed marijuana residue in the passenger compartment of the vehicle, he felt what he suspected to be large wads of currency in Quaker's pockets, and Quaker presented Trooper Holden with an expired, third-party rental agreement for the vehicle. Thus, we find that law enforcement officers did have probable cause to search both the passenger compartment and trunk of the vehicle. *See Gartrell*, 2014-Ohio-5203, at ¶ 58.

{¶38} Accordingly, Quaker's first and second assignments of error are overruled.

{¶39} In Quaker's third assignment of error, he argues that the trial court erred in overruling his motion to suppress because law enforcement officers lacked probable cause to arrest him. Specifically, Quaker argues that the vacuum packed, duct-taped item found in the backpack did not provide the officers with probable cause to arrest him because it was not field tested until after his arrest.

{¶40} However, we note that, in his motions to suppress or at the suppression hearings, Quaker did not argue that law enforcement officers lacked probable cause to arrest him. (*See* Doc. Nos. 27, 39, 72, 73, 86). In fact, the record is devoid of any argument regarding the validity of his arrest. "'It is well-settled law that issues not raised in the trial court may not be raised for the first time on appeal because such issues are deemed waived.'" *State v. Born*, 3d Dist. Hardin No. 6-17-13, 2018-Ohio-350, ¶ 10, quoting *State v. Barrett*, 10th Dist. Franklin No. 11AP-375, 2011-Ohio-4986, ¶ 13. Thus, because Quaker failed to raise the issue regarding his arrest in the trial court, the matter is not properly before us on appeal.

{¶41} Accordingly, Quaker's third assignment of error is overruled.

{¶42} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and ZIMMERMAN, J., concur.**

**/jlr**